## W. W. ROLLER & Co. v. C. M. OTT, *et al.*

1. CONTRACT; *Consideration; Presumption.* Where a plaintiff founds his cause of action upon a contract embodied in a written instrument, and neither the petition nor the written instrument shows affirmatively that there was no consideration for the contract, it will be presumed *prima facie* that there was a sufficient consideration. But held, in this particular case, that the petition and written instrument, without the aid of presumptions, both sufficiently show a sufficient consideration for the contract.

2. ———— *Contracts in Restraint of Trade; Public Policy.* A contract entered into upon sufficient consideration between O. and R., that O. shall not sell furniture in Ottawa to any person except R., is valid.

3. ———— Such contracts however, are, to some extent, against public policy, and hence their provisions should not be extended by construction .or implication so as to favor persons desiring to enforce them beyond what their terms would most clearly require.

*Error from Franklin District Court.*

ROLLER & Co., partners, commenced their action against *C. M. Ott* and *A. Gottschalk*, to recover damages for past breaches of a contract, and to enjoin defendants from further violations of said contract. Plaintiffs' petition was as follows:

(*Title.*) "The plaintiffs state that in March 1872, 'The Ottawa Furniture and Wood-Work Company' was duly organized as a corporation under the statutes of the state of Kansas, for the purpose of manufacturing furniture and other wood work, and of vending furniture at retail and wholesale in the city of Ottawa; that said corporation at said city erected a large and costly factory, fitted with valuable and powerful steam machinery adapted to the purpose of manufacturing furniture and other wood work, rapidly, and in large quantities, and at the same time said corporation put said factory into operation, and established and carried on in connection therewith a large wholesale and retail furniture store in said city, and said corporation continued to operate said factory and carry on said wholesale and retail business until about the 31st of January 1873, when the defendants *Ott & Gottschalk* purchased all the stock and property of said corporation, and took possession thereof; and afterward, on the 5th of February 1873, the plaintiffs herein and said defendants entered into an agreement to carry on said factory and wholesale furniture-store and trade as copartners, (of which agreement a copy is annexed marked 'Exhibit A.,') upon the terms therein set forth; that about April 1st 1873, said parties finding it impossible to get on harmoniously in the conduct and management of said business and factory, agreed to and did dissolve said copartnership upon the terms and conditions contained in a written memorandum thereof, of which a copy is hereto attached marked 'Exhibit B.,' and among which was and is a covenant of the following tenor, viz.: 'In consideration of deduction of $589.67 made by W. W. Roller & Co., as above, said C. M. Ott and A. Gottschalk on their part bind themselves not to sell any furniture in Ottawa to any other parties other than said W. W. Roller & Co., and at the lowest market prices.' At the time said agreement of dissolution was entered into, both the defendants well knew that these plaintiffs had long been and then were continuously engaged in the wholesale and retail furniture

business in the city of Ottawa aforesaid, and that they intended thereafter to continue in said business, as since hitherto they have actually done, and that said business could not be profitably carried on in Ottawa if subjected and exposed to the competition of the said factory; and as after said dissolution, the defendants intended to operate, and actually since then hitherto have operated said factory, as partners, producing therein large quantities of furniture, the covenant hereinbefore set forth was entered into by and between these plaintiffs and the defendants to prevent said wholesale and retail business of the plaintiffs from being injured and destroyed by the competition of the said factory, and of the sale of the furniture therein to be produced, either at wholesale or retail, by the defendants in the city of Ottawa, to any parties other than these plaintiffs, and said covenant was one of the principal inducements which led these plaintiffs to enter into said agreement of dissolution; and these plaintiffs have done and duly performed all the conditions thereof on their part to be performed. Yet the defendants, in violation thereof, and in breach of the covenant therein and above set forth, have within the six months last past, without plaintiffs' consent, repeatedly sold both at wholesale and retail many articles and large quantities of furniture, in the city of Ottawa above named, to divers parties other than these plaintiffs, and at the lowest market prices, to the damage and loss of profits to these plaintiffs in the sum of $500; and said defendants are still continuing to sell, in Ottawa aforesaid, and deliver to parties in said city other than these plaintiffs, many articles of furniture at retail and large quantities thereof at wholesale in violation of said covenant and agreement, and all this without the consent of plaintiffs. And said defendants have recently notified the plaintiffs that they the defendants do not intend to regard or in anywise perform any part of the said covenant above set forth any longer or further.

"Wherefore the plaintiffs pray that a temporary injunction may issue restraining the defendants and each of them from directly or indirectly selling any furniture in Ottawa, Franklin county, Kansas, to any parties other than these plaintiffs during the pendency of this suit, and that upon the final hearing hereof said injunction may be made perpetual; and that this court may take and state an account of the damages and loss of profits sustained by these plaintiffs by reason of defendants' violation of the covenant hereinbefore set forth, and that the plaintiffs may have judgment for such damages and loss of

profits when ascertained, and that plaintiffs have such other and further relief in the premises as may be just."

The defendants demurred. The district court, at the March Term 1874, sustained said demurrer, and dismissed plaintiffs' petition. Plaintiffs bring the case here on error.

*John W. Deford*, for plaintiffs:

The petition states a good cause of action. 32 Md., 561; 3 Am. Rep., 164; 10 Alb. Law Jour., 41; 3 Chand., (Wis.) 183; 6 Ind., 200. The court below assigned as its reason for allowing the demurrer, that the petition discloses no consideration for the covenant sued on. But it alleges at least two considerations, either of which is sufficient, viz.: 1st, that "said covenant was one of the principal inducements which led the plaintiffs to enter into said agreement of dissolution," and "was entered into by and between the plaintiffs and defendants to prevent said wholesale and retail business of plaintiffs from being injured and destroyed by the competition of the said factory." And the covenant itself says, "*in consideration* of deduction of $589.62," made by Roller & Co. But the court below suggested as to the "deduction of $589.62," that he could "make nothing out of it," on referring to "Exhibit B," annexed to the petition. To this we answer, 1st, "Exhibit B" is no part of the petition, and therefore in passing on its sufficiency, is not to be regarded; (2 Handy, 163;) and, 2d, the consideration fixed by the parties is sufficient, as in other contracts, in the absence of fraud; 11 Ind., 70. The fact that the court could not understand the "figuring" of the parties, as it appears in Exhibit B, was no proof of a *nudum pactum*. Indeed, if the contract were *silent* as to the consideration, it would still, being in writing, *import one;* 11 Kas., 488. *A fortiori*, then, where it *does recite* one, it ought to be taken as adequate until the contrary clearly appears, even though the court cannot see how the parties "figured it out." Besides, under the averments of this petition, a valuable and good consideration in

addition to that expressed in the covenant, might be proved by parol. (1 Greenl. Ev., §§ 285, 304.)

*C. B. Mason,* for defendants:

It is not enough that there be simply a consideration for a contract which may be in restraint of trade, but in addition to the pecuniary consideration, it must appear that there was some good reason for entering into the contract, and that it imposes no restraint upon one party which is not beneficial to the other: 21 Wend., 157; 40 N. Y., 545. The covenant in this case being indefinite in time, imposes a restraint upon one party which is not beneficial to the other, but is against the principles of sound public policy, and void.

Admitting that limited restraint in trade in a certain locality, and for a certain period, are valid contracts, yet such a contract is not valid except when founded on a good and sufficient consideration: 2 Pars. Cont., 747 to 753, and notes *a*, *b*, and *c;* 9 How. Prac., 335. The covenant on the part of defendants is without any consideration, as appears upon the face of the petition. We hold that the exhibits attached to the petition, and especially Exhibit B is to be held and taken as part of the pleading by the very terms of the allegation of the covenant in this petition.

The consideration received by defendants (if any is in this case) is a deduction claimed to have been made to defendants by plaintiffs. The partnership between plaintiffs and defendants was dissolved upon the terms and conditions of Exhibit B, which contains the covenant, "In consideration of deduction of $589.62 made by W. W. Roller & Co. as above," etc. This necessarily involves an examination of that portion of the agreement "B" which precedes this covenant. An analysis of Exhibit B shows that plaintiffs sold to defendants stock and other assets to amount of $4,120.79; that defendants sold plaintiffs merchandise to amount of $3,134.97: leaving due plaintiffs, $985.82. By the next recital it appears this sum of $985.82 was adjusted, being deducted from a claim of defendants against plaintiffs amounting to the sum

of $1,802.07, leaving still unsettled and due defendants, $816.25. Now by the terms of Exhibit B there remained no indebtedness from defendants to plaintiffs, but there exists an unadjusted amount of $816.25 claimed by the defendants to be due them from the plaintiffs. But however awkward or ambiguous the contract may appear, the demurrer was properly sustained; and if any action can be sustained it should be to reform the agreement.

The opinion of the court was delivered by

VALENTINE, J.: The questions involved in this case were raised in the court below by petition and demurrer. The grounds of the demurrer were—first, a defect of parties defendant; 2d, several causes of action improperly joined; 3d, the petition did not state facts sufficient to constitute a cause of action. The court below sustained the demurrer, and the plaintiffs now bring the case to this court. The defendants do not now claim that the demurrer should have been sustained upon either the first or the second ground of the demurrer, but claim that it was and should have been sustained upon the third ground thereof. Hence the only question for us to consider is, whether the petition stated facts sufficient to constitute a cause of action. The whole cause of action is founded upon the alleged breach by the defendants of a certain agreement in writing alleged to have been made and entered into between the plaintiffs and defendants. The substance of this contract is set forth in the petition, and a copy thereof is attached to the petition and referred to in the petition as "Exhibit B," although it is not in terms made a part of the petition. It is claimed by the defendants that this contract is void, first, for want of consideration, and second, because it is in restraint of trade, and therefore against public policy. These are the only questions in the case. Now, whatever may be the real facts in the case, we must take the facts as stated in the petition as true. And taking such facts to be true, there would not only seem to be a sufficient consideration for the contract, but the contract

1. Consideration; presumption.

would seem in all other respects to be valid. Whether we examine the petition with or without "Exhibit B," it so obviously states a sufficient consideration for the contract that we do not think it is necessary to discuss the same. The closing up of the copartnership existing between the plaintiffs and defendants, the final settlement thereof, and dissolution of the same, was a sufficient consideration for the contract. The release by the plaintiffs of $589.62 in their partnership settlement, was a sufficient consideration. But the contract is shown to have been in writing, and therefore, unless the contract or the petition affirmatively shows that there was *no* consideration, the contract itself will import a consideration. (*Fuller v. Scott*, 8 Kas., 25; *Waynick v. Richmond*, 11 Kas., 488, and statutes cited in these two cases.) Mere silence on the part of the petition or contract will not show that there was no consideration. But on the contrary, where the petition does not affirmatively show that there was no consideration it will be presumed *prima facie* that there was a sufficient consideration.

We do not think that the contract is void because in the restraint of trade. It merely binds the individuals, C. M. Ott and A. Gottschalk, not to sell any furniture in Ottawa to any person except W. W. Roller & Co. The provision of the contract relating to this matter reads as follows:

2. Contracts in restraint of trade.

"In consideration of deduction of $589.62 made by W. W. Roller & Co., as above, said C. M. Ott and A. Gottschalk on their part bind themselves not to sell any furniture in Ottawa to any other parties other than said W. W. Roller & Co., and at the lowest market-prices."

This contract does not prevent the "Ottawa Furniture and Wood-Work Company" from selling to others than Roller & Co. in Ottawa. And it does not prevent Ott and Gottschalk from selling furniture to others than Roller & Co. just outside of the city limits of Ottawa. It was probably designed to prevent Ott and Gottschalk from establishing a furniture store in the city of Ottawa. To this extent, and to the extent of binding them not to sell furniture in Ottawa to any

one except W. W. Roller & Co., we think the contract is valid.

The last clause of said contract reading, "and at the lowest market-prices," is probably void for uncertainty. The defendants are not bound to sell furniture to Roller & Co. anywhere, or at any price, and they are certainly not prohibited from selling furniture to any one, or at any price, outside of the city limits of Ottawa. Other portions of said contract not quoted in this opinion are about as defective as said clause. All contracts of this kind are to some extent against public policy, and hence their provisions should not be extended by construction or implication so as to favor parties desiring to enforce them beyond what their terms would most clearly require. They are not anywhere to be looked upon with favor. And where a party desires to enforce one of them, he must simply take what he has in the clearest terms got. That such contracts are valid, we would refer to the following authorities: *Dean v. Emerson*, 102 Mass., 480; *McClurg's Appeal*, 58 Penn. St., 51; *Dunlop v. Gregory*, 10 N. Y., 241; *Beard v. Dennis*, 6 Ind., 200; *Thomas v. Miles*, 3 Ohio St., 274.

The judgment of the court below is reversed, and cause remanded for further proceedings.

All the Justices concurring.

*3. Contracts should be explicit, and definite.*