## Rosana Richardson v. Louisa U. Emmert.

1. MILLINERY BUSINESS, *Not to Engage in — Injunction Granted.* Miss E. purchased of Mrs. R. a millinery business in the city of Fort Scott, and Mrs. R. covenanted in writing that she would "never enter into or be interested in any manner in the millinery business in that city." Prior to the purchase by Miss E., Mrs. R. had carried on the millinery business in Fort Scott for ten years, and during that time she had built up a large trade. After Miss E. had made the purchase, she took possession of the store and carried on the business at the old place; Mrs. R. having transferred to her the lease of the store-room. After the purchase by Miss E., Mrs. R. and her husband left the country and went to Ireland; soon afterward they returned to Fort Scott. The husband sold the homestead, the title of which

was in his name, and with the money so obtained they commenced to carry on the millinery business in Fort Scott in the name of the husband, Mr. R., but Mrs. R. had the principal supervision of it. She bought the millinery which they offered for sale. An advertisement was placed in the city papers notifying the public of Mrs. R.'s display of millinery, and inviting the ladies of the city to call and see her goods. *Held*, That upon the facts of the case, and the finding of the trial court against Mrs. R., the opening up and carrying on of the millinery business in the name of Mr. R., the husband, of which business Mrs. R. had the principal supervision, was a violation by Mrs. R. of her covenant, and she could be restrained by injunction.

2. AGREEMENT *to Arbitrate Differences — Jurisdiction — No Bar.* In the written agreement for the sale of the millinery goods, containing the condition that Mrs. R. would "never enter into or be interested in any manner in the millinery business in Fort Scott," was the following clause: "In case of any differences, they shall be settled by arbitration, the first party selecting one, the second party one, and the two so selected the third, and their decision shall be final and accepted." *Held*, That this clause did not oust the courts of their legitimate jurisdiction; and *held further*, that upon the written contract of the parties and the pleadings in the case, this clause was no bar to an action brought by Miss E. against Mrs. R. to enjoin her from being interested in the millinery business in Fort Scott.

### *Error from Bourbon District Court.*

INJUNCTION. Judgment for plaintiff *Emmert*, at the September term, 1888. The defendant *Richardson* brings the case here. The material facts are stated in the opinion.

*A. A. Harris & Son*, for plaintiff in error; *Dillard & Padgett*, of counsel.

*Ware, Biddle & Cory*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 8th day of July, 1886, Mrs. Rosana Richardson, the wife of M. J. Richardson, sold to Miss Louisa U. Emmert a stock of millinery goods in the city of Fort Scott for $2,000. A written agreement was signed and executed by the parties at the time of the sale. Mrs. Richardson covenanted, among other things, that she would "never

enter into or be interested in any manner in the millinery business in the city of Fort Scott." Prior to the purchase by Miss Emmert, Mrs. Richardson had carried on this business in Fort Scott for ten years: During that time she had built up a large trade. After Miss Emmert had made the purchase, she took possession of the store and carried on the business at the old place — Mrs. Richardson having transferred the lease of the store to her. In February, 1887, Mrs. Richardson, with her husband, left Fort Scott, going to Ireland. They returned to Fort Scott in the winter of 1888, and on April 12th of that year they commenced to carry on the millinery business in a room opposite the street where Miss Emmert was in business. On the back of the store the sign was "Richardson." On the front the sign was "M. J. Richardson." The business was carried on in the name of M. J. Richardson, but Mrs. Richardson had the supervision of it. She bought the dry goods and millinery which they offered for sale. About the time the millinery business was opened up in the name of M. J. Richardson, the following advertisement, with the consent of Mrs. Richardson, was published in the leading newspaper of Fort Scott:

"Thursday is the day set for the grand millinery opening at M. J. Richardson's, at Bright's old stand on Main street. The rapid growth of Fort Scott has had the effect to cause all our merchants to buy larger and finer stocks of goods this season than ever before, and particularly is this so in the line of millinery goods. The ladies of the city and county have never before had so fine an opportunity to make selections of styles and goods to their taste as at present, and foremost among our merchants to take the lead in their line is M. J. Richardson (at Bright's old stand), the Main street milliner. Mrs. Richardson is well known, and her taste in the purchase and selection of fine goods is superb. She has bought and is displaying a stock of millinery goods this season that is more beautiful and exquisite than ever before, and every lady in the city will be pleased by a visit to her store on Thursday next, the occasion of her grand opening. She invites all the ladies of the city and county to call and see her display of goods."

Afterward, the following advertisement was published, with the consent of Mrs. Richardson, in another paper of Fort Scott:

"The ladies of Fort Scott and vicinity are cordially invited to visit the new and attractive millinery and dry goods store of M. J. Richardson, on Main street, in Bright's old stand. . . . They have just opened another invoice of those elegant French sateens, which have been so pleasing and satisfactory to former purchasers. As to prices, the public is assured that nowhere can better bargains be attained. These goods were purchased for cash, and the best discounts secured. Therefore the lowest possible prices can be made to customers. The ladies are cordially asked to call and confirm these statements by personal examination."

This action was brought on March 14, 1888, by Miss Emmert, to enjoin Mrs. Richardson from entering into or being interested in any manner in the millinery business at Fort Scott, and also for damages. The trial court granted the injunction prayed for, and rendered judgment against Mrs. Richardson for costs. No damages were allowed. Mrs. Richardson complains, and brings the case here.

The contention is that Mrs. Richardson, since the sale of her stock of millinery goods to Miss Emmert, has never entered into or become interested in any manner in the millinery business in the city of Fort Scott; that she is simply aiding her husband in the conduct of his business, and that the assistance rendered by her to her husband is not a violation of the letter or spirit of her contract with Miss Emmert. As the trial court granted the injunction prayed for and rendered a judgment for costs against Mrs. Richardson, the general finding of the trial court is against her. We must assume that if the evidence and the inferences establish that Mrs. Richardson has violated her contract, the judgment must be sustained. That such contracts as were entered into between Mrs. Richardson and Miss Emmert are valid, see *Roller v. Ott,* 14 Kas. 609. All contracts of this kind are to some extent against public policy, and their provisions are not to be extended by construction or implication. (*Roller v. Ott,* supra.)

There is sufficient in the evidence, in view of the general finding of the trial court, to show that Mrs. Richardson, after her sale of her stock of millinery goods, entered into and again became interested in the millinery business in Fort Scott, in violation of her contract. The business evidently is carried on for the joint benefit of Mr. and Mrs. Richardson, but under her supervision. The husband furnished the money in the business from the sale of the homestead of the parties, the title of which was in his name, and the store is operated in his name, yet it is carried on for the interest of the wife as well as of the husband. Both are interested. Under her contract, Mrs. Richardson cannot become interested in any millinery business in Fort Scott in competition or opposition to Miss Emmert. (*Guerand v. Dandelet*, 32 Md. 561.)

It is claimed that the cases of *Harkinson's Appeal*, 78 Pa. St. 196, and *Tabor v. Blake*, 61 N. H. 83, are decisive against the judgment of the trial court.

In the Harkinson case, the mother sold a bakery and covenanted that she would not engage in the same business, directly or indirectly, in the same place for ten years. Within that time she established her son in the same business in the same place, advancing him money as she had done to her other children in their business. The trial court found as a fact that the business was carried on in good faith by the son, and not by the mother, and as no actual damage was shown, an injunction was refused. Mercer, J., in delivering the opinion in that case, said:

"In the present case the appellant did not erect nor furnish the establishment with any intention that she would engage in the business, or be in any manner interested therein. In furtherance of her plan for aiding her children, she had substantially advanced to him his supposed share in her estate. It was invested in that particular for his benefit and not hers. The effect was the same as if she had given or loaned to him money, with a knowledge that he intended so to use it. It is certainly going very far to say that by the general terms used in this agreement a parent has covenanted to control the business of her son by withholding from him his share in her

estate. . . . The appellant denies in her answer, that she has encouraged and promoted the business of others with the intent and effect of injuring complainant; on the contrary, she alleges and avers that she has, advised and encouraged the old customers of her place to continue their custom, and has endeavored to remove objections on their part to purchasing of the appellee."

That case is quite different from this. Mrs. Richardson has not advised or encouraged her old customers to continue their custom with Miss Emmert, nor has she endeavored to remove objections on their part from purchasing of Miss Emmert. Again, the mother in that case invested her money for the particular benefit of the son, and not for herself. In this case, Mrs. Richardson does not obtain wages, or pay for her services, but in carrying on the business the fair inference from the evidence is that she is interested in the business the same as her husband. Both get the benefit.

In the Tabor case, Blake agreed that "he would not open or cause to be opened a grocery, a billiard or an eating-saloon for trade in the village of Woodsville." Subsequently, Mrs. Blake, his wife, opened an eating-saloon in the village, and her husband acted as her agent in carrying it on. The finding of the court was that the business belonged to the wife, and that as the husband conducted the business in good faith as her agent, he did not violate his agreement. The findings of fact in that case were in favor of the party who had covenanted not to again engage in business, but in this case the finding is against such party. In many respects the cases are similar, but yet the facts are somewhat different. With the finding of the court against Mrs. Richardson, which is sustained by the evidence, we think it cannot be said, as in the Tabor case, that the defendant has not violated her contract.

The written contract contained the following clause:

"In case of any differences, they shall be settled by arbitration, the first party selecting one, the second party one, and the two so selected the third, and their decision shall be final and accepted."

It is contended that Miss Emmert cannot maintain any action until the prescribed method of arbitration has been pursued, or some valid excuse exists for not pursuing it.    We do not think that the clause in question was intended to oust the courts of their legitimate jurisdiction.    Evidently the differences referred to related only to the inventory, the articles purchased, the money to be paid, and other matters of that kind. (2 Wood, Fire Ins., § 456.)    Again, the defendant did. not allege in her answer that she offered to arbitrate, or that she had selected any person for arbitration.

The judgment of the district court will be affirmed.

All the Justices concurring.