Woodman v. Davison.

U. S. GRANT WOODMAN, *Appellant*, v. J. A. DAVISON,. *Appellee.*

No. 17,207.

SYLLABUS BY THE COURT.

EJECTMENT—*Wills—Title to Real Estate—Res Judicata.* One owning certain real estate at the time of his death provided in his will that for twenty years it should be used by the executors with other property in continuing his banking business, and at the end of that period the other property should be divided and this piece of real estate should go to his son; after his death all debts of the estate and special legacies were paid; the executors continued the banking business, but it shortly became insolvent; creditors began an action to subject its assets to the payment of their demands; the son was made a party; the petition alleged that all property in the executors' hands belonged to the business; that any interest the son had in the trust estate was inferior to the equitable lien of the creditors; judgment was rendered for the sale of the property belonging to the trust estate by a receiver, all parties to be barred of their interest after such sale; the receiver reported that he had sold the real estate referred to, for an amount which was about equal to its actual value; the sale was confirmed and a deed was ordered and made, under which possession was taken; at the expiration of the twenty-year period the son brought ejectment. *Held*, that his claim was barred by the proceedings in the prior action.

Appeal from Sedgwick district court. Opinion filed November 11, 1911. Affirmed.

*David Smyth*, for the appellant.
*O. A. Keach*, for the appellee.

The opinion of the court was delivered by

MASON, J.: U. S. Grant Woodman brought ejectment
for a business block against J. A. Davison. Judgment
was rendered for the defendant and the plaintiff ap-
peals. Woodman claims directly under the will of his
father, and upon the theory that the property was de-
vised to him subject to a right to its use for twenty
years by the executors. Davison claims under a re-
ceiver's sale made to satisfy indebtedness created by
the executors. The property was owned and occupied
as a bank building by Wm. C. Woodman, the plaintiff's
father, at the time of his death, in 1888. His will, after
disposing of his homestead and the proceeds of an in-
surance policy, made several specific bequests, and then
continued:

"Subject to the foregoing provisions, and the dis-
charge of the foregoing specific bequests, I give and
bequeath all my property, real, personal and mixed
wherever situated, to my executors hereinafter named,
to be by them held, controlled, managed and disposed
of as hereinafter provided.

"The whole of said property, except said homestead,
shall be held and considered as the active capital and
available resources of the First Arkansas Valley Bank
of William C. Woodman & Son, for and during the
period of twenty years after my decease. The banking
and other business of the said First Arkansas Valley
Bank shall be conducted and continued on by my said
executors for said period of twenty years after my
decease, which business shall be conducted in the name
of William C. Woodman & Son. Said executors shall
have power  .  .  .   generally to do any act or thing
in and about the management of said estate or said
business, which I would be competent to do if in life;
provided no sale or mortgage of lot 33 on Main street
in the city of Wichita, Sedgwick county, Kansas [the
property in controversy], or the bank building thereon,
or the furniture and fixtures used therein, during said
term of twenty years."

The division of the estate at the end of twenty years

was provided for, the provision relating to the bank building reading as follows:

"There shall be given to my son, U. S. Grant Woodman, lot 33 on Main street in the city of Wichita, Sedgwick county, Kansas, and the bank building thereon, and all the furniture, fixtures and appliances therein used in connection with the said banking business, as his property absolutely."

All special legacies excepting one, all debts of the testator, and all expenses of the administration were fully paid. The banking business was continued, under the old name, by the executors, U. S. Grant Woodman being one of them. In 1891 the bank became insolvent and suspended payment. The executors were removed and U. S. Grant Woodman and another were appointed administrators with the will annexed. An action was brought by creditors to wind up the business. Woodman was made a defendant both as administrator and individually. The petition set out the will at length, and asked to have the assets of the trust estate applied to the payment of the indebtedness. It did not attempt to describe the property in detail, but contained an allegation that all the property in the possession of the administrators belonged to and was a part of the trust estate. It also alleged that Woodman and others claimed an interest in the trust estate, but that their interest was inferior to the equitable lien of creditors. A receiver was appointed to take charge of all the property belonging to, "or in any way appertaining to," the estate of the bank. Woodman filed an answer in which he made a personal claim against the trust estate. In a reply the plaintiff alleged that Woodman was personally liable for the debt sued on. A judgment was rendered which in express terms adjudged that Woodman was liable upon the indebtedness due to the plaintiff and to other creditors, but provided that no personal judgment should be rendered against him. A provision was added that such failure

to render a personal judgment against Woodman should not prejudice the right of the creditors to attack a conveyance of the real estate which the executors had made. The property held by the receiver was ordered sold to pay the indebtedness, and the usual decree was rendered, barring the interest of all parties after the sale. The receiver reported that he had sold the property in controversy for $20,000 in claims against the banking business. The sale was confirmed and a receiver's deed was ordered and made.

Woodman claims that the executors and administrators had no interest in the bank building beyond the right to use it for twenty years; that the proceedings in the action in which the receiver was appointed had reference only to the trust estate—to the property belonging to the banking business; that the receiver's deed passed title only to what remained of the estate for twenty years; and that at the expiration of that period he was entitled to the possession of the bank building as its absolute owner.

It is true that in the pleadings, orders and judgments in the action in which the sale was made, the property sought to be reached was described in general terms as the trust property, or as the estate of W. C. Woodman & Son, or of the First Arkansas Valley Bank. But in a schedule of the property in his hands which he filed by order of the court, the receiver listed lot 33, without any indication that he claimed less than a full title. And in his report of the sale he specifically stated that he had sold this lot—not a limited estate in it, but the property itself. The confirmation of its sale must be interpreted in connection with the receiver's report, and amounts to a decree barring all claims of any of the defendants, including Woodman, to the real estate sold. The record therefore presents a complete bar to Woodman's claim asserted in the present action. The fact that in the prior action the question of his reversionary interest does not appear to have been dis-

tinctly presented or considered does not affect the conclusive character of the judgment. The issue was necessarily involved in the decree barring him of all interest in the bank building, and he can not avail himself of his own failure to present it in more definite form. (68 L. R. A. 323, 325, note.) The rule is that a judgment does not operate as a bar, where invoked in litigation upon a different cause of action, except as to such questions as were actually decided. (*Stroup v. Pepper,* 69 Kan. 241, 76 Pac. 825.) But this does not mean that a judgment can never be a bar in another form of action except as to matters which have actually engaged the attention of the court. Otherwise little or no benefit could result from any default decree—for instance, one quieting title. The relief granted by a judgment can not be annulled by showing in a subsequent proceeding of a different character that it might have been defeated by interposing a defense which was not in fact offered. The decree of the court barring Woodman from all interest in the property sold by the receiver necessarily involved a decision that he had no title thereto, as against the purchaser. That question therefore was one of those "actually decided," and became *res judicata* between the parties, regardless of the form of the litigation in which the attempt might be made to raise it.

In *Chellis v. Coble,* 37 Kan. 558, 15 Pac. 505, a bankrupt scheduled real estate which he did not own, and it was held that the sale and conveyance of the property by the assignee under the order of the court did not cut off the right of the real owner, although he had made proof of a claim against the bankrupt and filed it in the same proceeding, afterwards accepting the securities already held in satisfaction of his demand. The court said:

"Counsel insist that the law implies a knowledge [on the part of the true owner] of whatever took place in the bankrupt proceedings. That is true so far as the matters connected with the transactions in which he

was interested or was bound to be interested by virtue of his claim against the estate, and no further." (p. 566.)

In *Wilkins v. Tourtellott*, 28 Kan. 825, an assignee in bankruptcy scheduled, sold and conveyed real estate which did not belong to the bankrupt, and it was held that the proceedings did not amount to an adjudication against the bankrupt that he was the owner. In each of these cases it was suggested that if the issue of the ownership had been presented the determination of the court would have been final. Upon the grounds already stated we think that in the case now under consideration the issue of ownership was presented. The action was brought in a court of general jurisdiction to declare a lien upon all the property of the trust estate, or of the banking business. The petition alleged that Woodman claimed an interest in this property, which was inferior to that of the plaintiff, and that all of the property in the hands of the administrators (which included lot 33) belonged to the estate. These allegations raised a question as to what property was liable for the indebtedness sued on, and as to Woodman's interest in the property sought to be applied to its payment. He was bound to be interested in these matters if he claimed to have title to lot 33, and he was charged with notice of all the proceedings with reference thereto, and concluded by the judgment in which they culminated.

If it were clear that all parties had in fact conceded that Woodman owned the property, subject to the twenty-year estate, that there was no purpose to reach it or to affect his title, and that the entry of a judgment purporting to cut off his interest resulted from inadvertence, it might be possible, in furtherance of justice, so to construe the record that the judgment might be regarded as ineffective because lying wholly outside of the issues in the case, as was done in *Gille v. Emmons*, 58 Kan. 118, 48 Pac. 569. But that is not

the situation presented. The petition in the case in
which the receiver was appointed set out the will in
full, so that it may be said to have disclosed the actual
state of the title. But the express allegation that all
"the property in the possession of the administrators"
belonged to and was a part of the trust estate chal-
lenged the construction of the will now contended for
by Woodman, and invited him to make the claim which
he now urges,. for the phrase quoted naturally sug-
gested the physical property in the hands of the ad-
ministrators rather than the estate therein to which
they were legally entitled. The circumstance that the
petition did not specifically describe the bank building
as a part of the assets of the business is not significant,
because a list of the assets was not attempted. If it
had been conceded that the trust estate held only a
twenty-year interest in the building, it would have been
natural that a statement to that effect should have been
made in the petition or elsewhere in the proceedings.
The evidence tends to show that the parties assumed
the contrary to be true. In the inventory filed by the
executors in the probate court lot 33 was listed as a
part of the property which had come into their hands,.
and was appraised at $15,000. At the time of its sale
it was said to be worth between $5000 and $6000. The
testimony warrants the inference that the $20,000 of
claims for which the sale was made were valued at
from $5000 to $6000. The receiver's deed purported
to convey the lot itself and not merely an estate for a
term of years. The purchaser shortly executed a war--
ranty deed to the present defendant, which was
recorded, thereby evidencing that possession was held
under a claim of complete title. Another circumstance
greatly strengthens the position of the claimant under
the receiver's deed. While the judgment, in the action
in which the receiver was appointed, did not authorize
a general execution against Woodman, it expressly ad-
judicated that he was personally liable to the creditors.

of the bank. The building therefore was sold to pay his debt. In view of this situation it can hardly be supposed that the creditors understood that the fee of the bank building rested in him, or that the court acted on that theory.

The judgment is affirmed.