JOSEPH F. NAUGLE et al., *Appellants*, v. GEORGE W.
NAUGLE et al., *Appellees*.

No. 18,182.

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Verbal Contract—Damages—Petition
   States but One Cause of Action.* A petition which alleges a
   verbal agreement to sell real estate, a sacrifice of plaintiffs'
   land for $1500 less than it was worth in order to comply with
   such agreement and possession and permanent improvement
   by the plaintiffs, but expressly alleges or asks no damages—
   held to state but one cause of action, under which perform-
   ance or, in default thereof, damages may be recovered.

2. ———— *Subsequent Action on Same Contract—Res Judicata.*
   After being defeated in such suit in their attempt to compel
   specific performance the plaintiffs sued the defendants for
   damages. *Held,* that such action was barred by the determi-
   nation of the former suit.

3. ———— *Cause of Action Not to be Used Twice.* While in fact
   the question of damages was not litigated or determined in
   the former suit, still as such relief was possible and inhered
   in the cause of action therein set up, the same cause of action
   can not be again used to obtain the relief which might have
   been had in such prior proceeding.

4. ———— *Splitting Cause of Action—Different Kinds of Relief.*
   The same reason which precludes splitting a cause of action
   forbids its repeated use to obtain different kinds of relief
   which could have been had in the first action.

5. PLEADINGS—*Demurrer—When Sufficient in Form.* While a
   demurrer to a portion of an answer searches the record and
   may be sustained as to the petition, still when the latter,
   though in general terms, sets forth a *prima facie* cause of
   action and has been met by answer instead of demurrer, it
   will be deemed sufficient.

Appeal from Bourbon district court. Opinion filed
May 10, 1913. Affirmed.

*J. I. Sheppard, James G. Sheppard,* and *Kate Shep-
pard,* all of Fort Scott, for the appellants.

*John L. Caldwell, A. M. Keene,* and *E. C. Gates,* all
of Fort Scott, for the appellees.

Naugle v. Naugle.

The opinion of the court was delivered by

West, J.: Plaintiff and wife sued the plaintiff's father and mother for specific performance of an alleged real-estate contract. The claim was, in substance, that they were the owners of a hundred-acre farm near Fort Scott worth about $4000, incumbered by a mortgage of $1300; that the defendants owned the northeast quarter of section 9, township 26, range 23, and also another quarter section in Bourbon county, besides a dwelling house and two acres of ground across the road from the first-described land in which house they resided; that during the year 1907 the parents requested the plaintiffs to sell their hundred-acre farm, which was their homestead, and by the first of March, 1908, move upon and take possession of the northeast quarter of section 9, the one nearest where the defendants lived, and that they would execute and deliver a deed for this quarter to the plaintiffs if they would pay the defendants at the time the deed was made the proceeds of the hundred-acre farm. That relying on this promise the plaintiffs sold their land for $1000 above the mortgage, sacrificing it for $1500 less than it was worth, and before the first day of March, 1908, in pursuance of the verbal agreement, went upon the northeast quarter of section 9 and had ever since continuously resided there as their homestead and had made lasting improvements; that though repeatedly requested, the defendants had refused to convey as they had agreed, but the plaintiffs had stood ready at all times to pay the $1000 upon the execution of the deed from the defendants, and they asked judgment that such deed be ordered by the court and for such other relief as they might be entitled to. The defendants answered in effect that from March 1, 1908, until about August 26, 1909, plaintiff J. F. Naugle had partial possession of the northeast quarter of section 9 for which he had paid part of the rent and turned over to

the owner, George W. Naugle, part of the crops raised
on the land, to be applied on the rent, and had prom-
ised to pay the remainder; that while the plaintiffs
had such partial possession defendant George W.
Naugle had paid for the partial cultivating, reaping
and gathering the crops on the land and had assisted in
producing the same, had paid the taxes and placed val-
uable and lasting improvements upon the land with
the knowledge and approval of the plaintiffs. Defend-
ants further alleged that on and prior to August 26,
1909, a controversy arose between the father and son as
to money differences and as to possession of the real es-
tate in question, whereupon they entered into a full and
complete settlement in writing by the terms of which
the son paid the father $500, which agreement was set
out and made a part of the answer. Further, that
defendant George W. Naugle was the owner of the
land in fee simple and entitled to its immediate posses-
sion and that the plaintiffs unlawfully kept him out of
possession for which he prayed and "for whatever said
court may hold the value of the use of said property is
up to the time said plaintiffs are ousted from said real
estate," and for costs and all other relief to which they
might be entitled, and that the title be quieted in
defendant George W. Naugle. The reply alleged that
plaintiffs were occupying the land in question on
August 26, 1909, as their homestead, and that the set-
tlement contract was not signed by or given with the
joint consent of the plaintiffs and was therefore void;
that they had been at all times ready and were still
ready upon the order of the court to return the $500 re-
ceived from George W. Naugle.

The jury found that the parties entered into a verbal
contract by which the defendant agreed to convey
the land in question; that the plaintiffs were to pay
their equity derived from the hundred-acre farm,
but whether for part or full payment the jury did
not determine; that the plaintiffs, before the begin-

Naugle v. Naugle.

ning of the action had not offered to make such payment, and that they had never offered to pay the defendants the $500 paid to Joseph Naugle as a compromise referred to in the defendants' answer; that the defendants received a part of the crops in 1908-'09; that the plaintiffs made no permanent or lasting improvements on the land but that defendants did, and that the defendant had paid the taxes since March 1, 1908; that the plaintiffs sold their hundred-acre farm for less than its real value in order to move upon the land in controversy pursuant to an agreement with the defendant. The court found that the answers to the special questions were true, and ordered that the plaintiffs pay the defendants for the use of the real estate belonging to the defendants a certain portion of the grain raised on the land and adjudged that the defendants were the owners and entitled to possession of the real estate in controversy, and ordered that the plaintiffs deliver possession to the defendants on March 1, 1911. After the end of this litigation the plaintiffs again sued the defendants, making the same allegations as before concerning the contract, and then alleged that in order to comply with the agreement they were compelled to sacrifice their hundred-acre farm and sell it for $1500 less than it was worth, and that since that time it had increased in value $2000 over and above any sum that had been expended in improvements thereon, and that they had repeatedly since March 1, 1908, demanded that the defendants execute a deed in pursuance of the agreement and that they had failed and refused so to do, and the prayer was for $3500 damages for breach of contract and for costs. The former litigation was pleaded in bar, to which a demurrer was filed and overruled, and the question presented is whether or not this ruling was correct.

It is suggested that the demurrer does not reach the direct allegation that the matter now under considera-

tion was actually adjudicated in the former action. But as the portion of the answer demurred to set out all the former pleadings and the judgment, including the findings of the jury, it was neither strengthened nor weakened by the pleader's own conclusion of law.

Much difficulty and confusion arise out of the rule often announced, that a judgment is conclusive of everything that was or might have been litigated under the issues. In *Stroup v. Pepper*, 69 Kan. 241, 76 Pac. 825, the rule was stated to be that when the second action between the same parties is upon a different claim or demand the judgment in the prior action operates as an estoppel only as to those matters in issue upon the determination of which the finding was made or the judgment rendered, and does not extend to matters which might have been but were not litigated and determined in the former action. This rule appears more equitable and less mechanical and artificial than the other, and it is supported by abundant authorities and has been consistently followed by this court since the Stroup decision. The defendants contend that the former petition stated a cause of action for specific performance and for the recovery of damages. True, it did allege that in order to comply with the agreement the plaintiffs were compelled to sacrifice their land for $1500 less than it was worth, but they did not ask for this kind of relief. What they desired and prayed for was a conveyance which would presumptively have made them whole. What the court decided was that the defendants would not be compelled to convey and that the plaintiffs should pay them for the use of the land; also, that they did not offer to pay such proceeds, although they sold it for less than its real value in order to move upon the quarter section pursuant to the agreement. It would seem, therefore, that the court and jury could not see their way clear to require a conveyance without payment of the consideration, but mani-

Naugle v. Naugle.

festly they did not consider or determine whether the plaintiffs had been so injured by the alleged default of the defendants as to be entitled to damages. It is argued, however, that there was but one cause of action and that it can not be split in two, and *Henry v. Mc-Kittrick*, 42 Kan. 485, 22 Pac. 576, is cited. In that case the petition set up facts entitling the plaintiff to specific performance and to damages for nonperformance and prayed such relief in the alternative. It was said that but one cause of action was stated, the relief sought in the prayer being no part thereof; that the cause of action was made up of the plaintiffs' right to a deed, and a violation of that right by the defendant; that the relief might consist of performance or of damages, and that in reality there was no misjoinder of causes, and hence the demurrer on that ground was not good. While a creditor may not sue for one-half his debt at a time, and thus split his cause of action, he is not compelled to pursue his remedy at law for damages for a breach of contract, but may seek to secure specific performance only. To do so is not to split his cause of action into parts, but to use it for one only of two possible purposes. In *Huey v. Starr,* 79 Kan. 781, 788, 101 Pac. 1075, 104 Pac. 1135, it was held that when the plaintiff states facts sufficient to entitle him to alternative relief he can not be required to elect his remedy before proceeding to trial. In that case, however, there were several defendants, some of them not affected by the claim for damages. Cause of action is in *Bruner v. Martin,* 76 Kan. 862, 865, 93 Pac. 165, defined as the right to prosecute an action with effect, and it was said that it could not exist without the concurrence of a right, a duty and a default, or an obligation upon one party in favor of the other the performance of which is refused. In *Routh v. Finney County,* 84 Kan. 25, 113 Pac. 397, it was held that a judgment against the plaintiff in an action for rent, the issues

being whether the plaintiff owned the property and whether the defendant occupied it under such circumstances as to make him liable to the owner for rent, did not estop the plaintiff to assert the same title in ejectment subsequently brought against the same defendant in the absence of a showing that in the former action the question of title was actually decided. It was said that the former judgment might have determined that he had no title or that the defendant had not so occupied as to become liable for rent, but it had not necessarily determined both questions, and the rule in the Stroup case, that the bar does not apply to a "different cause of action," was followed. Of course the right to eject the defendant and the right to collect rent were different causes of action and not parts of one and the same cause. A different phase of the subject was presented in *Woodman v. Davison*, 85 Kan. 713, 118 Pac. 1066, wherein it was decided that a judgment of foreclosure barred all parties defendant from subsequently bringing ejectment on the theory that a life estate only went under the foreclosure. It was said (p. 718) that the decree barred Woodman from all interest in the property and involved the determination that his title was all extinguished, and therefore the question of his title was "actually decided" and became *res judicata* between the parties. Still another application of the rule is found in *Clifton v. Meuser,* 88 Kan. 408, 129 Pac. 159, holding that one who was defeated in her contention that certain money was paid to her for services performed after receiving it could then maintain an action to recover from the estate of the former owner of the money the reasonable value of such services. In the first case the person who had performed the services was sued for the money on the ground that it was a delivery for deposit, and answered that it was received in payment of services. In the second case she

sued the estate to recover for the services, and was met by a plea of *res judicata*.  The court said:

"The verdict in that case may possibly have been against her because the jury believed she had performed no services, but the record does not affirmatively show that to have been the ground. . . . The issues in the two actions were not identical.  In the first the question was whether an express agreement for the passing of the title to the money had been made and performed.  In the second the question was whether services had been rendered under such circumstances that the law implied a contract to pay their reasonable value." ᵼ (pp. 409, 410.)

It was pointed out that a petition may contain two causes of action—one on an express, the other on an implied contract to pay for services (*Berry v. Craig*, 76 Kan. 345, 91 Pac. 913), and that proof in support of one is not admissible in support of the other, and that they are in reality distinct and different causes of action, although there can be but one recovery.  Authorities were cited to show that a judgment (adverse) on one, however, is no bar to an action on the other when different proof is required.

It is familiar doctrine that a court of equity having obtained jurisdiction of the subject matter will grant alternative monetary relief if necessary and make a full settlement of the controversy.  (*Messer v. Hybernia Sav. etc. Society*, 149 Cal. 122, 84 Pac. 835; Fry on Specific Performance, 4th ed., §§ 1298-1315; Pomeroy, Specific Performance of Contracts, 2d ed., §§ 469-474.)

Fry points out that in early times the court of chancery did not entirely disclaim jurisdiction in respect to damages, but subsequently disowned it, and a broad distinction was set up between compensation and damages.  The power, however, was reasserted in 1855, and in 1858 by the passage of Lord Cairns' Act the court was in suits for specific performance to have power, if

it should think fit, to award damages to the party injured, either in addition to or in substitution for performance, such damages to be assessed in such manner as the court should direct. Pomeroy, after referring to the same statute, says (§ 481) that the decisions under Lord Cairns' Act have gone further in permitting damages in equity cases than the courts of many of the American states have done under a system which does not recognize any distinction between actions at law and suits in equity.

That the petition in the first action really furnished a basis, not only for specific performance but for damages in default thereof, and stated but one cause of action, is brought out by the reasoning of Bliss in the third edition of his work on Code Pleading:

"The law may give more than one kind of relief for a single wrong—that is, for one cause of action— . . . As, in enforcing a contract secured by mortgage, or suing upon a promissory note given for the purchase-money of land, in pursuing one remedy it is sufficient to aver and prove the contract; while, in seeking the other, the mortgage or the consideration of the note must also be averred and proved. And yet there is but one right—the right to the money; and one wrong—the refusal to pay it . . . but each action is based upon the same cause of action, and in seeking the full relief the plaintiff does not unite the two causes of action in one suit, but simply so states the facts as to entitle him to such relief." (§ 114.)

In section 115, in discussing plaintiff's right to relief in an action to require reëxecution of a destroyed instrument and payment of the same, it being due, the author says:

"The wrong in the first case is in not fulfilling the obligation; in the second, in not executing a new one. So, in an action for the reformation of a written agreement, the plaintiff may also seek its enforcement as it was understood by the parties and should have been written, or may only desire the correction of the error. The wrong in one case is in refusing to do as

the party agreed to do; in the other, in refusing to correct the mistake. The plaintiff seeks to recover land which is really his own, but the legal title is in another—fraudulent conveyance perhaps intervenes—he may sue only to perfect his title, as by cancelling the conveyance, or he may ask also for possession and for damages. This is more like splitting an action; but inasmuch as before the adoption of the code the first relief could be obtained only in equity, while an action for the latter, if sought separately, was called an action at law, the two actions in regard to the same land are allowed. They may be, and ordinarily should be, combined—that is, there should be but one action—and if the plaintiff seeks full relief, it is not a union of causes of action."

In *Brick Co. v. Gas Co.*, ante, p. 177, 130 Pac. 649, an action to recover damages for failure to furnish gas, it appeared that in a former action to enjoin the defendant from discontinuing the furnishing of gas the plaintiff also stated a cause of action for the recovery of the same damages which was dismissed without prejudice, and it was held, following *Hudson v. Remington,* 71 Kan. 300, 80 Pac. 568, and *Stroup v. Pepper,* 69 Kan. 241, 76 Pac. 825, that the question of damages had not been litigated in the former action and therefore was not *res judicata.* In the Hudson case it was held that a judgment in an action involving several issues of fact which recited a finding upon one and was silent as to the rest was no bar to a subsequent action based upon a different cause of action. In the nature of things a suit to enjoin a gas company from discontinuing to furnish gas which it had contracted to furnish could not be the same action or cause of action as one to recover damages for having already failed to furnish such gas. The one would be preventive, the other compensatory. While the rule against splitting a cause of action is thoroughly well settled, and based largely, if not entirely, upon the ground that a defendant may not be harassed with the expense of repeated litigation for parts of one

claim, by a parity of reasoning it must be held that a plaintiff with only one cause of action can not be permitted to use it more than once in order to recover from the defendant; otherwise the latter might be harassed with as many law suits as there were kinds of relief which the plaintiff deemed himself entitled to. While, speaking precisely, the question of damages was not in fact tried out and determined in the former action, still the cause of action, which included a right to recover the damages, was tried and determined and the plaintiffs had their opportunity and day in court to recover on their one cause of action whatever the facts and the law warranted. So, then, the same cause of action had been litigated, and the only reason that relief by way of damages was not sought or had was the failure of the plaintiffs to use their cause of action as fully in the former action as they might have done.

It is not splitting the cause of action like a suit to recover one-half the amount of a promissory note, or an account (*Wells v. Hickox*, 1 Kan. App. 485, 40 Pac. 821; *Coal Co. v. Brick Co.*, 52 Kan. 747, 35 Pac. 810) ; neither is it like an action to recover a second installment of damages being part of an entire claim (*W. & W. Rld. Co. v. Beebe*, 39 Kan. 465, 18 Pac. 502; *Hubbard v. Power Co.*, ante, p. 446, 131 Pac. 1182) ; nor like an attempt to recover more of the animals wrongfully seized by a sheriff after part of them had been recovered (*Thisler v. Miller*, 53 Kan. 515, 36 Pac. 1060) ; nor exactly similar to an effort to recover on an account after defeat in an action to recover on the same account and on a note given therefor. (*Farwell Co. v. Lykins*, 59 Kan. 96, 52 Pac. 99) ; nor like an action to recover an indebtedness after the mortgage securing it had been foreclosed (*Dumont v. Taylor*, 67 Kan. 727, 74 Pac. 234) ; nor yet like an action against the sheriff on his bond for damages for taking and detaining attached property after recovering a judgment for its return and costs in a replevin

action wherein damages were asked (*Ellis v. Crowl,* 46 Kan. 100, 26 Pac. 454), all of which were held to be improper. But it is practically equivalent to splitting, and if permitted would entail the same hardship on the defendants, and would really be trying a second time a cause already litigated and determined between the same parties. The record presents a border-line case not exactly paralleled in any decision we have found, but the logic and the reason of the matter impel us to the conclusion that the demurrer was rightfully overruled.

It is argued that the demurrer, which searches the entire record, should be leveled at the petition, for the reason that it sets up only an oral contract to sell real estate. But an examination of the petition shows that it alleged the verbal contract that if plaintiffs would sell their farm and move upon the land in controversy, and take possession, the defendants would make a deed on payment by plaintiff of the proceeds of their farm, and that "the plaintiffs duly performed all the conditions of said agreement on their part, including the tender to defendants of the proceeds of plaintiffs' said land." While the record shows that the former trial had settled that they had not paid or offered to pay the defendants the proceeds of their land, this allegation, though somewhat general, is good as against a demurrer (Civ. Code, § 124) and amounts to a sufficient allegation of part performance to take the case *prima facie* out from the operation of the statute of frauds (*A. T. & S. F. Rld. Co. v. English,* 38 Kan. 110, 16 Pac. 82; *Greenlees v. Roche,* 48 Kan. 503, 29 Pac. 590; *Taylor v. Taylor,* 79 Kan. 161, 99 Pac. 814; *Smethers v. Lindsey,* ante, p. 338, 131 Pac. 563).

The ruling of the trial court is affirmed.