No. 18,570.

ADALINE WHEELER, *Appellant*, v. JAMES W. BALLARD et al. (MATTIE ANDERSON et al., *Appellees*).

SYLLABUS BY THE COURT.

TITLE AND OWNERSHIP—*Effect of Decree Quieting Title.* The life tenant in possession of certain land sued the remainderman and another to quiet title, alleging in herself the legal title and peaceable possession, and averring that the defendants set up a claim of estate and interest adverse to that of the plaintiff, and praying that such claim be shown null and void as against the plaintiff. The summons by publication notified the defendants that in default of answer or demurrer the petition would be taken as true and judgment rendered quieting plaintiff's title in and to the land in question as against the title of the defendants, and the title of the defendants, if any, would be determined to be null and void as against the title of the plaintiff. The journal entry recited

proper service, default, a finding that the averments of the petition were true, and concluded: "It is further considered by the court, that the plaintiff . . . is the owner of the following lands . . . and that the defendants . . . and each of them be excluded and forever precluded of any interest or title in and to the above-described lands and tenements." *Held*, that such decree extinguished the defendants' title and left the plaintiff as to them the full and complete owner of the land.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed January 10, 1914. Reversed.

*W. B. Pleasant*, of Ottawa, for the appellant.

*John C. Quin*, and *B. F. Bowers*, both of Ottawa, for the appellees.

The opinion of the court was delivered by

WEST, J.: In 1886 Benjamin Yancy willed the land in controversy to an adopted niece, Adaline Anderson, "after the death of my beloved wife Eliza and myself." He died shortly thereafter and the widow elected to take under the will, she being an unlearned colored woman then about seventy-five years of age. She continued to reside on the land until about 1907 and had the use thereof until her death, March 1, 1912. This action was begun by Adaline Wheeler, as heir of the widow, against the heirs of the devisee of the fee in remainder, and having been defeated, she appeals. It appears that in 1895 the widow sued her daughter, Mary Payne, and the devisee of the fee in remainder, Adaline Anderson, to quiet title, and it is argued by the present plaintiff that this resulted in fixing the complete title in the widow, while the defendants contend that it did not add to her life estate. The latter was the view taken by the trial court, and its correctness is the principal question for determination.

In her petition to quiet title the widow alleged that "she, the plaintiff, has the legal title to, and is in peace-

able possession of" the land; and "that the said Mary Payne and Adaline Anderson set up a claim of estate and interest in and to the said premises, as heretofore described, adverse to the estate and interest of the said plaintiff, so as aforesaid averred. Said plaintiff therefore prays that the said Mary Payne and Adaline Anderson may be compelled to show their said title, and that it may be shown null and void as against the said plaintiff." In the affidavit for publication sworn to by her attorney it was stated that the plaintiff had caused to be filed a petition praying that certain described lands "in which the said defendants, Mary Payne and Adaline Anderson, claim to have some interest in and to the said premises, adverse to the estate and interest of the said plaintiff, and praying in said petition that said defendants . . . be compelled to show their said title, and that it be determined to be null and void as against the said plaintiff; and that said defendants be barred and precluded from all right, title and interest in and to said premises and each and every part thereof," and that Mary Payne resided in Arkansas, and Adaline Anderson in Kansas City, Mo. The summons by publication notified the defendants that unless they should answer or demur to the petition it would be taken as true and judgment rendered in favor of the plaintiff "quieting her title in and to the following-described lands and tenements, to wit, . . . as against the title of said defendants; and the title of said defendants (if any they have) will be determined to be null and void as against the title of the said plaintiff." The journal entry recites proper service and the default of both defendants and a finding that the averments of the petition were true, and concludes as follows: "It is further considered by the court that the plaintiff, Eliza Yancy, is the owner of the following lands and tenements situated in said county and state and described as follows, to wit, . . . and that the defendants, Mary Payne and

Adaline Anderson, and each of them be excluded and forever precluded of any interest or title in and to the above-described lands and tenements; and that the plaintiff pay the costs of this action."

In the conclusion of law that so much of the former judgment as purports to exclude and forever preclude Adaline Anderson from any interest in or title to the land is outside and beyond the issue raised by the petition and the notice of publication therein and therefore void, reference is made to *Gille v. Emmons,* 58 Kan. 118, 48 Pac. 569. In the conclusion that the proceedings in the former cause did not add to the title formerly held by Eliza Yancy, *Lockwood v. Meade,* 71 Kan. 739, 81 Pac. 496, is cited. In *Gille v. Emmons,* the defendant's wife was adjudged liable on two promissory notes involved in foreclosure proceedings against her husband and herself, although she had never signed the notes, and the only prayer as to her was that her equity of redemption in the mortgaged premises be foreclosed. This was held void upon the ground that her indebtedness was not an issue in the case, and was never submitted to the court for its determination. *Reynolds v. Stockton,* 140 U. S. 254, holding that a judgment must be responsive to the matters controverted, and other decisions similar in effect were referred to and followed. It was said, however, that if there had been an attempt to set up a liability against the defendant's wife "and the cause of action had been imperfectly or defectively stated, a judgment rendered thereon, although erroneous, would be deemed to be valid until reversed on error or set aside by some direct proceeding for that purpose." (58 Kan. 123.) In *Woodman v. Davison,* 85 Kan. 713, 118 Pac. 1066, property was left by will to be used for twenty years by the executors, then to go to a son of the testator. The executors continued the business unsuccessfully and creditors began an action to subject its assets to the payment of their demands. The son was made a

party, and the petition alleged that all the property in the executors' hands belonged to the plaintiffs and any interest the son had in the trust estate was inferior to the equitable lien of the creditors. Judgment was rendered for the sale of the property belonging to the trust estate, all parties to be barred after such sale. At the expiration of the twenty-year period the son brought ejectment, but it was held that his claim was barred by the former proceedings. In the opinion it was said:

"The fact that in the prior action the question of his reversionary interest does not appear to have been distinctly presented or considered does not affect the conclusive character of the judgment. The issue was necessarily involved in the decree barring him of all interest in the bank building, and he can not avail himself of his own failure to present it in more definite form. . . . The decree of the court barring Woodman from all interest in the property sold by the receiver necessarily involved a decision that he had not title thereto, as against the purchaser. That question therefore was one of those 'actually decided,' and became *res judicata* between the parties, regardless of the form of the litigation in which the attempt might be made to raise it." (p. 716.)

It was further said that had it been clear that all parties had in fact conceded Woodman's ownership and there had been no purpose to reach or affect it, and the judgment barring him had resulted from inadvertence, it might be possible, in furtherance of justice, to regard it as within the rule in *Gille v. Emmons*, but that the express allegation that all the property in the possession of the administrators belonged to and was a part of the trust estate was an invitation to Woodman to make the claim which having failed to make then he could not make afterwards.

In *Lockwood v. Meade*, 71 Kan. 739, 81 Pac. 496, it was held that an ordinary decree quieting a plaintiff's title does not have the effect of transferring to him "as against a stranger to the suit" the title theretofore held

by the defendant. There the holders of a tax deed procured a decree quieting their title against the holder of an earlier one and then transferred their title to the defendant. In the suit by the fee owner both tax deeds were held voidable, and he was awarded possession but required to reimburse the defendant for the amount the earlier tax-deed holder had expended in procuring her deed. This was held to be erroneous, and concerning an ordinary decree quieting title it was said:

"It effects no affirmative increase in the plaintiff's rights. It strengthens his title only in that it cuts off a source of attack. It brings to him no new and independent right which he may assert against a stranger to the suit. It adjudges that the defendant has no claim to the property—not that a claim which he has must be deemed to be transferred to the plaintiff." (p. 741.)

The effect of the decision was that a mere decree quieting title against a former tax-deed holder, while precluding such holder or any one under him from asserting title to the real property affected, did not transfer to the plaintiff the tax lien which such holder might have asserted upon being dispossessed by the original owner.

We do not think that these two decisions justify the conclusions of law reached by the trial court. The former action must be regarded the same as if the defendants had both appeared and contested the allegations of the petition, which alleged that the plaintiff had the legal title to the land and that they set up a claim of estate and interest in and to the same adverse to the plaintiff's estate and interest as averred. The publication summons advised them that upon their default judgment would be rendered in favor of the plaintiff quieting her title to the land as against their title, and that the latter, if any, would be determined to be null and void as against that of the plaintiff, who alleged that she had the legal title and was in peaceable possession of the property. The language of the peti-

Wheeler v. Ballard.

tion should be given its natural and ordinary meaning, and usually legal title means a full and absolute title. (8 Words and Phrases, p. 6980.) We see no escape from the conclusion that based upon such allegations and service the decree upon the default of the defendants properly excluded them from any title or interest in or to the land in controversy. In *Entreken v. Howard, Adm'r,* 16 Kan. 551, an action like the one now under consideration was brought under the code, and the petition alleged in general terms ownership and possession of the land and that the defendant set up and claimed an estate and interest adverse to the estate and interest of the plaintiff, and prayed that he be compelled to show his title and that it be adjudged null and void as against the plaintiff. It was held that this was sufficient to sustain the decree against a collateral attack, and it was said:

"Nor do we in this case mean to intimate that the objections to this petiton would be sufficient for a reversal, even in a direct proceeding therefor." (p. 554.)

To the same effect is *Cartwright v. McFadden,* 24 Kan. 662. In *Comm'rs of Marion Co. v. Welch,* 40 Kan. 767, 20 Pac. 483, a general finding of title in plaintiff and consequently of no title in the defendants was held to be conclusive and binding and forever estopped them from asserting a claim of title which existed at the time of finding a judgment. In *Manley v. Park,* 62 Kan. 553, 64 Pac. 28, the rule frequently announced was again quoted with approval:

" 'If the petition sets forth facts sufficient to challenge the attention of the court with regard to its merits or authorize the court to deliberate with respect thereto, then the judgment subsequently rendered upon it is not void, but at most is only voidable, and it can not even then be held to be voidable except when it is attacked directly and in a direct proceeding.' " (p. 564. See interesting decision and discussion, *Clevenger v. Figley,* 68 Kan. 699, 75 Pac. 1001.)

Wheeler v. Ballard.

In *Finn v. Howard,* 77 Kan. 421, 94 Pac. 801, an affidavit for publication in a suit to quiet title recited that the plaintiff had filed his petition against the defendants, naming them, praying judgment quieting title to certain described lands and that the defendants be barred and foreclosed of any right, title and interest in and to the same, was held to be not so defective as to render a judgment based thereon absolutely void. It was said that the phrase "quieting title in plaintiff" is one which would not be misunderstood by any person familiar with legal terms. In *Hillyard v. Banchor,* 85 Kan. 516, 118 Pac. 67, a judgment against a mortgagee and others to quiet title reciting that the defendants had no estate or interest in or to the premises and that they be perpetually barred and enjoined from asserting any claim thereto adverse to that of plaintiff was held to bar the lien of the mortgage. (See, also, *Shafer v. Covey,* 90 Kan. 588, 135 Pac. 676.)

The ordinary purpose of bringing a suit to quiet title is to make the plaintiff's ownership complete as against any claim asserted by the defendant, and the usual effect of the decree is to bar the latter and those claiming under him from asserting against the plaintiff or his successors any title or interest in the property affected. (32 Cyc. 1384.) A decree destroying the defendant's title for the benefit of the plaintiff when other parties are not involved (as they were in *Lockwood v. Meade,* 71 Kan. 739, 81 Pac. 496, and in *Sache v. Wallace,* 101 Minn. 169, 112 N. W. 384, relied on by the defendants) is so similar in effect to one which transfers the title from the one to the other that a discussion of their distinguishing features could not add to the "gladsome light of jurisprudence."

The pleadings in the former case were left in the condition of the plaintiff's asserting a complete title as against the defendants and their failure to disprove the assertion, and while it may have been a wrong for the life tenant thus to proceed against the remainder-

man it devolved upon the latter at that time and in that suit to contest her right so to do; and to permit successors in interest after the lapse of many years to do so collaterally in another suit would be to impair the integrity and verity which by the settled and ancient rules of law attach to a judicial decree.

This view which we feel compelled to take renders it unnecessary to consider the question of adverse possession presented and argued at length in the briefs and upon the hearing.

The holding is reversed with directions to enter a decree in favor of the plaintiff.