No. 21,127.

BENJAMIN MULLARKY, *Appellee,* v. H. A. MANKER, *Appellant,*
and R. C. POSTLETHWAITE.

### SYLLABUS BY THE COURT.

1. EXCHANGE OF PROPERTY—*Relief on the Ground of Fraud—Evidence.*
In an action for relief on the ground of fraud, the evidence held to have
been sufficient to warrant submitting to the jury the matter on which
the verdict was based.

2. SAME—*Motion to Separately State Causes of Action—Judicial Discre-
tion.* The overruling of a motion to require different causes of action
to be separately stated and numbered, being a matter of discretion, is
ordinarily not subject to review.

3. SAME—*Demurrer to· Petition—Misjoinder of Parties.* Where a de-
murrer to a petition on the ground of misjoinder is based upon the
claim that one of the defendants is not affected by one of the causes of
action, the sustaining of a demurrer to the evidence as· to that defend-
ant prevents the overruling of the demurrer on that ground from being
· material on appeal.

4. SAME—*Motion to Strike Matter from Petition.* The overruling of a
motion to strike matter from a petition held not to have been prejudi-
cial.

5. SAME—*Evidence.* Rulings admitting evidence held not to have been
erroneous.

Appeal from Jewell district court; RICHARD M. PICKLER,
judge. Opinion filed December 8, 1917. Affirmed.

*W. R. Mitchell,* of Mankato, *T. F. Garver,* and *R. D. Garver,*
both of Topeka, for the· appellant.

*R. W. Turner,* and *D. F. Stanley,* both of Mankato, for the
appellee.

The opinion of the court was delivered by

MASON, J.: Benjamin Mullarky sued H. A. Manker, asking
damages in the amount of $17,840, on account of fraudulent
conduct, of which he alleged the defendant had been guilty.
He recovered a judgment·for $3,537.86, from which an appeal
is taken. The judgment was based upon a finding that the
plaintiff suffered a loss of $4,840 ·through the defendant's
misconduct, it being found that, except for this particular
transaction, he would have owed the defendant $1,304.14.

1. The principal contention of the defendant is that the finding of this liability on his part was not warranted by the evidence. The following is a brief statement of the means by which the plaintiff, according to his own story, was defrauded of the amount named:

The defendant owned a piece of real estate in Jewell City known as the Kreamer property, which he wished to exchange for a tract of land in Chase county, owned by one S. D. Elyea. Elyea did not care to make this trade, but was willing to exchange his land for a building in La Harpe, owned by the plaintiff. In April, 1915, the defendant negotiated a deal by which the plaintiff was to deed the La Harpe property to Elyea, Elyea was to deed the Chase county land to the defendant, and the defendant was to deed to the plaintiff either the Chase county land or the Kreamer property, as the plaintiff might prefer. This arrangement was carried out to the extent that the plaintiff conveyed his property to Elyea, and Elyea some time later conveyed his to the defendant. On May 10, 1915, a written contract was entered into for the sale by the defendant to the plaintiff of certain property, including 460 acres of growing wheat, valued in the deal at $20 an acre. In a separate paragraph, however, the plaintiff was credited with $5,000 on the agreed purchase price, reducing the actual consideration that much. This paragraph was on the first of the two typewritten pages comprising the contract, the signature of the parties being upon the second sheet. After the execution of the contract the paragraph referred to was changed (a new first page being substituted for the original) so that instead of the $5,000 item being shown as a mere reduction in the purchase price thereinbefore specified, it was made to appear as a credit to be given to the plaintiff in consideration of his releasing the defendant from his obligation to pay the plaintiff for the La Harpe property by making a deed to the Kreamer property or to the Chase county land. In speaking of the written contract, shortly before it was drawn up, the plaintiff told the defendant that it would cover the part of the trade regarding the wheat; that with regard to the La Harpe property they would "check that down as unfinished business and later on make settlement about September 1st." They

then agreed that the price to be allowed should be $4,840. The plaintiff has never received anything for the property.

The defendant's version of the affair is this: The arrangement for the exchange of property between the plaintiff, the defendant, and Elyea was made, substantially as stated. The plaintiff deeded the La Harpe building to Elyea, and Elyea deeded the Chase county land to the defendant. Prior to May 10, 1915, the plaintiff and the defendant agreed that the latter should convey the Kreamer property in exchange for the property conveyed to Elyea, but should make the deed to the plaintiff's father, to whom the plaintiff was indebted. While matters stood in this condition the written contract was entered into, it being agreed that the plaintiff should have a credit of $5,000 on the purchase price therein specified, in consideration of allowing the defendant to keep the Kreamer property. As the agreement had already been made that the deed should be executed to the plaintiff's father, the paragraph on the subject was made to contain a provision that the plaintiff was to procure a surrender of his father's rights in the matter.

The jury found specifically that the written contract had been altered after its execution, and the sufficiency of the evidence to uphold the verdict turns largely upon whether any part of it had a tendency to show such alteration. The defendant's argument to the contrary is mainly a summary of a number of circumstances pointing to the extreme improbability of such a change having been made. Granting the force of the considerations suggested, as bearing upon the unlikelihood of a spurious first page having been substituted for the original (that obviously being a necessary incident to the change, if any was made), the reasoning falls short of justifying a reversal. Such a substitution was physically possible, and the plaintiff gave testimony tending to show that it was made. He testified that he heard the contract dictated as it was being written on a typewriter; that the first page was read to him by the writer, but not in the form in which it now appears; that the paragraph in question is not in accordance with the actual agreement of the parties; that no writing in "long-hand (that is, made with a pen) was inserted in his presence, whereas the copy produced contained a number of such interlineations. In the brief of the defendant it is said: "That this contract, when

Mullarky v. Manker.

signed, was in the same form as when introduced in evidence is shown by an overwhelming preponderance of the testimony." This is a matter, however, upon which the verdict of the jury, having been approved by the trial court, must be regarded as final.

The precise point of controversy between the parties will be made clearer by a somewhat fuller statement. It seems to be admitted that the price named for the growing wheat—$20 an acre—was excessive, for the defendant testified that "we figured the wheat price was inflated." The plaintiff asserts that the credit of $5,000 agreed to be given to him in the contract was merely a means of reducing the inflation. He admits that there was an understanding that he was to procure (as he did) a release from his father of any claim to the Kreamer property, but he gives this explanation regarding the matter: He and the defendant had disagreed as to the terms on which the Kreamer property was to be deeded to him in exchange for the La Harpe property, the defendant demanding $500 boot, which he refused to pay. In that situation the plaintiff's father offered to buy the Kreamer property from the defendant at a valuation of $8,000, and the offer was orally accepted; but no writing was executed, and nothing further came of this negotiation. The plaintiff insists that what he was to procure from his father was merely a release of any claim to the property under this unenforceable oral agreement—a purely formal matter, as his father had invested nothing in the property and had acquired no legal right whatever regarding it.

The defendant, on the other hand, as already indicated, asserts that the previous agreement had been that he was to give up the Kreamer property to compensate the plaintiff for the La Harpe property, but was to make the deed to the plaintiff's father because the plaintiff owed him $2,000; and that in the negotiations leading up to the wheat deal it was agreed that a $5,000 credit should be given to the plaintiff in consideration of the defendant being allowed to retain the Kreamer property and being released from his liability on account of having obtained the benefit of the La Harpe property. The written contract in its present form is so worded as to support this version of the transaction.

There was sharp conflict in the evidence. No purpose would be served in going into greater detail on the subject. We con-

clude that the verdict must stand unless affected by some ruling on a question of law.

2. The petition recited a number of transactions to which no reference so far has been made in this opinion. The defendant contends that several causes of action were stated, and complains of the overruling of a motion to require them to be separated and numbered. Under the code of civil procedure as it existed prior to 1909 different causes of action set out in the same pleading were required to be separately stated and numbered. (Gen. Stat. 1901, § 4522.) The section imposing this requirement was omitted in the revision of that year, and at present the ruling on such a matter is expressly committed to the discretion of the trial court (Civ. Code, § 122, Gen. Stat. 1915, § 7014), and is therefore not subject to review. (*Cribb v. Hudson*, 99 Kan. 65, 160 Pac. 1019.)

3. A demurrer to the petition on the ground of misjoinder was overruled. It is urged that several causes of action were stated in the petition, one of which did not affect R. C. Postlethwaite, who was joined as a defendant. A demurrer to the evidence was sustained as to Postlethwaite, who thus for practical purposes ceased to be a party, thereby rendering immaterial the question whether his being a defendant occasioned a misjoinder.

4. A motion to strike matter from the petition was sustained in part and overruled in part. It is contended that error was committed in allowing any of the challenged matter to remain in the pleading. Granting that the allegations objected to were redundant or irrelevant, no prejudice to the defendant is apparent. (*Harris v. Morrison*, 100 Kan. 157, 163 Pac. 1062.) It is argued that the superfluous matter, containing charges of fraudulent intent and conduct, tended to inflame the jury against him. As the recovery was had upon a single item, and upon the basis of its amount having been agreed to, such an effect of the language complained of does not seem to be established.

5. A final complaint relates to the admission of evidence. While the plaintiff was on the stand he was asked by his attorney to state what was said in a conversation between himself and the defendant on September 7. It is contended that the answer was incompetent. It does not appear to be very

material, but in any event the question was not improper, since it did not necessarily call for anything that was not competent evidence. Nothing is preserved for review in this connection, since the defendant did not ask to have the question made more specific, and did not in any way attack the answer. (*Stone v. Bird,* 16 Kan. 488.)

A day or two after the signing of the contract, its drafts-man, with whom it had been left, and who at the time was the defendant's attorney, had his stenographer make a copy of it (or what was supposed to be a copy), which he certified as correct and filed with the register of deeds. This purported copy was not a literal transcript of the instrument produced in court, the language being different in a number of instances, although none of these differences affected the essential meaning of the contract. The plaintiff was permitted to introduce this copy in evidence, over the objection of the defendant. As the copy was declared to be accurate and made public by the attorney of the defendant, acting apparently in his behalf, and as it did not conform strictly to the instrument asserted by him to be the original contract, the genuineness of which was attacked by the plaintiff, we think the court was justified in admitting it for whatever bearing it might be thought to have upon the question whether a substitution for the first sheet had been effected.

The judgment is affirmed.