No. 28,152.

THE BROWN-CRUMMER INVESTMENT COMPANY, *Appellee*, v. M. R. AMERMAN, *Appellant*.

(268 Pac. 82.)

▇ Opinion filed June 9, 1928. ▇

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey* and *W. F. Lilleston,* all of Wichita, for the appellant.

*Thomas E. Elcock, James G. Martin* and *Dale M. Bryant,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover damages for the alleged breach of a memorandum of agreement pertaining to certain bonds. The trial court overruled defendant's demurrer to the petition, and he has appealed. The instrument sued on reads as follows:

"Memorandum of agreement entered into this 13th day of February, 1922, by and between M. R. Amerman of Wichita, Kansas, party of the first part, and The Brown-Crummer Investment Company, of Wichita, Kansas, party of the second part.

"Whereas, the said M. R. Amerman, now has under contract the construction of certain street improvements of the city of Ponca City, Oklahoma, consisting of the following street improvement districts: 13, 16, 17, 22, 24 and 25, the cost of which work is approximately $300,000; and

"Whereas, said M. R. Amerman desires to sell the bonds to be issued and delivered to him in payment of such work to The Brown-Crummer Investment Company under the following terms and conditions:

"Said Amerman agrees to deliver to the Brown-Crummer Investment Com-

pany, at Wichita, Kansas, 90% of the bonds covering street improvement districts 13, 16, 17, 22 and at the price of 80 cents and accrued interest, on the dollar, said Brown-Crummer Investment Company having the right to select the 90% portion of said issues as desired by it.

"Regarding the approximately $100,000 of bonds to be issued to cover the cost of street improvements, districts 24 and 25, the said Amerman agrees to deliver all of the bonds of said issue upon the following conditions:

"Said Brown-Crummer Investment Company shall pay to said Amerman, the price of par and accrued interest for approximately 60% of such bonds, being the third, fourth, fifth, sixth, seventh and eighth maturities. The first, second, ninth and tenth maturities of such bonds, or approximately 40% thereof, shall be deposited with The Brown-Crummer Investment Company, in trust, however, as follows:

"If there are any delinquencies in the payment of any of the bonds comprising the 60% portion described above, sufficient of the funds collected from the 40% portion of said bonds shall be turned over to The Brown-Crummer Investment Company to be applied absolutely to the payment of such delinquencies. In case any delinquent payments of said 60% portion of bonds are eventually paid by the city, the amount thereof is to be returned to the trust fund at the time of such payment.

"At the expiration of the period when all of the bonds comprising the 60% portion have matured and have been paid, the bonds or proceeds remaining from the 40% portion shall be divided equally between said Amerman and The Brown-Crummer Investment Company.

"The Brown-Crummer Investment Company agrees to pay said Amerman interest at the rate of six per cent (6%) per annum on his one-half equal portion of said fund so held in trust by it.

"It is understood that all of the bonds above described shall be 6%, 1 to 10 year optional bonds, issued under the laws of Oklahoma, and are to be delivered by October 1, 1922, all of which bonds are to be accompanied by complete transcript of the proceedings, the approving opinion of G. A. Paul, attorney, Oklahoma City, and shall also be subject to approval as to legality by James G. Martin, attorney, Wichita, Kansas." (Concluding paragraph with signatures.)

The petition alleges that the bonds issued by district 22 were delivered; that "No bonds from districts 13, 16 and 17 were ever delivered by defendant to plaintiff, and defendant has at all times failed, neglected and refused to deliver to plaintiff any bonds covering said improvement districts 13, 16 and 17, although plaintiff has often demanded delivery thereof." There were further allegations with respect to the statutes of Oklahoma with reference to improvement bonds; that the improvements were made by districts with which both plaintiff and defendant were familiar; that the amount of bonds which should have been delivered to plaintiff for districts 13, 16 and 17 was $136,131.17; that they were at the time of

the value of one hundred cents on the dollar and accrued interest; and that by reason of the neglect, failure and refusal of the defendant to deliver the bonds, plaintiff has been damaged in the sum of $27,226.23, for which sum plaintiff prays judgment with interest since October 1, 1922.

It is contended on behalf of appellant that plaintiff's petition fails to state a cause of action for the reason: (1) That the portion of the "memorandum agreement" upon which plaintiff endeavors to predicate its action is unilateral and cannot form the basis of this action by plaintiff. (2) There is no allegation that bonds for improvement districts 13, 16 and 17 were ever issued, or issued and delivered to defendant. (3) And in any event, the petition does not allege that plaintiff was at any time ready, able and willing to take the bonds.

Examining the memorandum of agreement it will be noted that the provisions therein with respect to bonds covering improvement districts 13, 16, 17 and 22 are quite different from the provisions concerning bonds to cover the cost of street improvement districts 24 and 25. As to the bonds for districts 24 and 25, there are specific covenants that defendant agrees to deliver them, and that the plaintiff shall pay defendant for them at a stated price, and as to some of them a sort of trust agreement is provided. There are no such mutual covenants with respect to bonds covering street improvement districts 13, 16, 17 and 22. As to these, there is a covenant of defendant to deliver them to plaintiff, but there is no covenant on plaintiff's part to receive and pay for them. The parties knew how to make mutual covenants, for they did so with respect to the bonds for districts 24 and 25. Hence, the fact that they did not do so with respect to the bonds for districts 13, 16, 17 and 22, indicates a clear intention not to have mutual covenants with respect to them. The provisions, therefore, with respect to these bonds are unilateral (*Van Deren v. Heineke & Co.*, 122 Kan. 215, 252 Pac. 459, and cases there cited), and certainly can amount to nothing more than an offer on defendant's part to deliver to plaintiff such bonds on certain terms. (See Williston on Contracts, §§ 13, 25.) Only indirectly, if at all, does the petition allege that plaintiff accepted such offer. There is an allegation that defendant "has at all times failed, neglected and refused to deliver plaintiff any bonds covering said improvement districts 13, 16 and 17, although plaintiff has often demanded delivery thereof." When we consider

that the petition in this case was filed two days less than five years after the memorandum agreement was executed it will be seen that these allegations are vague and indefinite as to any time and manner of accepting an offer, treating the provisions respecting them as an offer on behalf of defendant, and the petition lacks any specific allegation that plaintiff was ready, able and willing to buy the bonds on the terms proposed at any specific time. But we pass these contentions of appellant without more careful analysis, for the reason that we deem the second point argued by appellant as being well taken and decisive of this appeal.

Examining the written instrument we are forced to inquire, What bonds were the parties having a memorandum of agreement about? The instrument recites that defendant has under contract the construction of certain street improvements, "and whereas, said M. R. Amerman desires to sell the bonds to be issued and delivered to him in payment of such work. .. . . Said Amerman agrees to deliver, . . ." etc. It is clear this memorandum of agreement related only to "bonds to be issued and delivered to" Amerman. It did not relate to any other subject. Now there is no allegation in the petition that the bonds for street improvement districts 13, 16 and 17 were ever issued and delivered to Amerman. It is conceded in the brief of appellee in this court that bonds for these improvement districts were never issued. It therefore follows that the subject matter of the memorandum of agreement never came into existence. Their existence was, of course, essential to any sale and transfer of them by defendant to plaintiff. Appellee's answer on this point is that this is a matter of defense. This answer is not good. Even if the written instrument be construed as a binding contract, with mutual obligations for defendant to sell and deliver these bonds to plaintiff, and plaintiff to accept and pay for them; or, if it be construed as an offer on the part of defendant to sell them to plaintiff upon certain terms, which offer had been properly and in due time accepted, still the subject matter of their contract is "the bonds to be issued and delivered to" defendant. Before plaintiff could maintain an action either for specific performance or for damages for failure to perform, it is essential that it allege and prove that the bonds were in fact issued and delivered to defendant, and that he had failed to deliver them to plaintiff. (See *House v. Faulkner*, 61 Tex. 308, where a similar instrument was construed.) In its brief appellee suggests that the fact that the bonds were not issued may

have arisen from some fault or dereliction of defendant. There is no allegation of this kind in the petition and nothing in the record upon which to base such an argument. We are unable even to see how that would be material in so far as this memorandum of agreement is concerned. If such a situation existed, it is possible plaintiff might have predicated some kind of an action thereon in tort, although it is difficult from anything suggested, even in the briefs, to see how that might have been done, and we need not further speculate on it, for this action is not founded in tort; it is predicated on this memorandum of agreement, and plaintiff's action must stand or fall upon its terms. Since the terms of this instrument relate only to bonds to be issued and delivered to defendant, and since it is conceded that no bonds were in fact issued or delivered respecting improvement districts numbers 13, 16 and 17, it necessarily follows that plaintiff has no cause of action by reason of any failure of defendant to deliver to plaintiff such bonds. With this view of the case the litigation may just as well end.

The judgment is reversed, with directions to sustain the demurrer to the petition.