No. 28,804.

E. L. Sharpless, *Appellant,* v. The J. B. Kirk Gas and Smelting Company and J. B. Kirk, *Appellees.*

(280 Pac. 788.)

Opinion filed
October 5, 1929.

*Ben W. Berg,* of Independence, for the appellant.
*Travis Morse, F. J. Oyler* and *G. R. Gard,* all of Iola, for the appellees.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover damages for breach of an oral agreement to execute a written option contract for the sale of gas properties. Demurrers to plaintiff's petition were sustained, and he appeals.

For convenience the J. B. Kirk Gas and Smelting Company will be designated the company. The petition alleged substantially that on or about May 14, 1927, the defendants orally agreed with the plaintiff that in consideration of plaintiff's incurring the expense and inconvenience of having the gas properties owned by the company inspected, investigated and appraised by engineers employed by the plaintiff and his associates, that upon the arrival of the engineers at Iola, the defendants would make, execute and deliver to plaintiff or his nominees their written option contract by which the defendants would agree to sell and transfer all the property and assets of the company, except the oil-producing properties, to plaintiff or his nominees for the sum of $1,100,000; that the defendants agreed that this written option contract should continue from its execution so long as the engineers of the plaintiff and his associates were actively engaged in the investigation of the properties and business of the company, and that plaintiff should have the exclusive right to purchase at any time during such investigation, and the plaintiff and his associates orally agreed to purchase the properties provided it checked out with the representation, data and other

information furnished to plaintiff by the defendant, J. B. Kirk; that it was agreed between plaintiff and Kirk, who was at all times acting for himself and in behalf of the company, that the plaintiff was also considering the purchase of the T. S. Salathiel properties, which, by reason of their location, production and pipe lines, would make a favorable merger with the Kirk properties; that Kirk and Salathiel orally agreed between themselves and with the plaintiff that they and each of them would make their written option contract for their respective properties on the conditions above stated when the engineers of plaintiff arrived in Kansas, or within a reasonable time thereafter, for the purpose of making the investigation and appraisal of the Kirk and Salathiel properties; that Salathiel, who carried on the negotiations between the plaintiff and defendants, advised the defendants that the plaintiff was acting for and on behalf of himself and certain associates for whom he was expecting to purchase the properties and that the Kirk properties would be placed in a merger for the sum of $1,200,000, which would net the plaintiff $100,000; that after the making of said oral contract and with a view to carrying the same into effect and in performance of his agreement therein, the plaintiff and his associates did retain and employ engineers skilled in public utilities and in the making of appraisals and prepared to bring them from Pittsburgh, Pa., to Kansas for the purpose of making an inspection of the properties and appraisals thereof necessary in effecting a sale of said properties; that after the plaintiff and his clients had employed said engineers they, through T. S. Salathiel, communicated to the defendant Kirk the fact of such employment and the fact that said engineers would leave Pittsburgh about a certain time and arrive in Kansas about a certain time; that upon receipt of said communication, Kirk by letter advised Salathiel that he did not regard his transaction as a binding contract and while he would not say that he would not go through with the deal he wanted it understood that he was negotiating with other people regarding the sale of the properties; that at that time Kirk for himself and in behalf of the company was negotiating with others for the sale of the Kirk properties, and when plaintiff's engineers arrived Salathiel executed his written option contract, but the defendants declined to execute theirs and said that they would wait until the following Saturday before determining whether or not they would make the written option contract; that the engineers waited at

Iola at Kirk's request until Saturday, when the defendants refused to carry out their agreement but entered into a contract with other parties for the sale of their properties for $1,250,000, or $150,000 more than the plaintiff had agreed to pay the defendants; that the plaintiff had at all times been able, willing and ready to perform, but defendants, having sold their properties, were unable to perform, to the damage of the plaintiff in the sum of $100,000; that defendants knew when they made this oral agreement for an option on their properties that the plaintiff would make a profit of $100,000 and that he would be damaged and suffer that loss if defendants breached their contract.

It will be observed that the action is not based upon an option contract, but upon an alleged oral agreement to later enter into an option contract.

The first question presented is whether the petition alleged a consideration for the contract. The plaintiff contends that it shows a benefit to the promisor, or a detriment to the promisee; a benefit to a third person and a promise for a promise; that its allegations are sufficient as against a demurrer. We cannot concur in plaintiff's contention. Viewed in its most favorable aspect, the consideration alleged for the oral agreement was the incurring of the expense and trouble of having the properties owned by the company inspected by engineers to be employed by plaintiff. According to the alleged arrangement the plaintiff was not bound to provide the engineers and Kirk could not compel the plaintiff to perform by procuring the engineers. Plaintiff could abandon the matter at any time without liability. In *Miami Coca-Cola Co. v. Orange Crush Co.*, 291 Fed. 102, it was said:

"I understand the law to be, where the consideration for a promise of one party is the promise of the other, there must be absolute mutuality of engagement, so that each party has the right to hold the other party to a positive agreement. In other words, both parties must be bound or neither will be." (p. 103.)

See, also, *Marble Company v. Ripley*, 10 Wall. 339, 19 L. Ed. 955; *Willard Co. v. United States*, 262 U. S. 489, 67 L. Ed. 1086; *McCaffrey v. B. B. & R. Knight, Inc.*, 282 Fed. 334; 1 Williston on Contracts, pp. 219-222.

In 6 R. C. L. 688 the rule is thus stated:

"Where a contract is intended to bind both parties, or when it is of such form or nature that it contains mutual executory provisions—that is to say, where both parties have bound themselves or intended to bind themselves by reciprocal obligations—the doctrine as to the requirement of mutuality ap-

plies; and in such a case, if for any reason one of the parties is not bound, he cannot compel performance by the other. The reason is that the promise of the party who is not bound is not a sufficient consideration for the promise of the other party."

In *Electric Management & Engineering Corp. v. United P. & L. Corp.,* 19 F. (2d) 311, it was said in the opinion:

"The rule is thus stated: 'When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option, while the other has not, or, in other words, because it is obligatory on one and optional with the other.' (9 Cyc., p. 334; *Conley Camera Co. v. Multiscope & Film Co.,* [C. C. A. 8] 216 F. 892, 896.)

"The foregoing rule applies where there is a valuable consideration paid by one party to another for the privilege of doing a certain thing. It is otherwise when the sole consideration is a promise for a promise, and the things to be done or the goods to be furnished are uncertain, indefinite, and optional with the party seeking to enforce the contract. (*Conley Camera Co. v. Multiscope & Film Co.,* supra; *Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co.,* [C. C. A. 8] 114 F. 77, 57 L. R. A. 696; *City and County of Denver v. Stenger,* [C. C. A. 8] 277 F. 865.)" (p. 313.)

"Where an executory contract consists of mutual promises both parties must be bound, or it will be void for want of mutuality." (*Heiland v. Ertel,* 4 Kan. App. 516.) See, also, *Woolsey v. Ryan,* 59 Kan. 601, 54 Pac. 664; *Railway Co. v. Bagley,* 60 Kan. 424, 56 Pac. 759; *Van Deren v. Heineke & Co.,* 122 Kan. 215, 252 Pac. 459, and authorities cited. "Mutuality of obligation is an essential element of every enforceable agreement." (13 C. J. 331.) And this mutuality must exist and be present at the time of the execution or the making of the agreement. (*City and County of Denver v. Stenger,* supra.)

In this instance, if what plaintiff said about employing engineers took the verbal form of a promise, such promise was not the price demanded and paid for defendant's promise to grant an option. It was nothing bargained for by defendants and given to them in exchange for their promise, and so did not satisfy the definition of consideration. (Am. Law Inst. Restatement, Contracts, § 75.)

The allegations of the petition were very indefinite and uncertain, but we are of the opinion they showed that there was such want of mutuality that nobody was bound and plaintiff's expenditures in employing engineers were voluntarily made. The conclusion at which we have arrived renders it unnecessary to discuss other questions ably argued in the briefs.

The judgment is affirmed.