No. 30,468.

C. C. Shelden, *Appellant,* v. George E. Bright et al., *Appellees.*

(10 P. 2d 831.)

Opinion filed May 7, 1932.

*J. B. McKay,* of El Dorado, *W. A. Ayres, Austin M. Cowan, C. A. Mc-Corkle, J. D. Fair* and *W. A. Kahrs,* all of Wichita, for the appellant.

*Charles G. Yankey, John L. Gleason, Kenneth K. Cox, Harvey C. Osborne, J. G. Sears, Jr.,* and *Morris H. Cundiff,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This is an action in equity by C. C. Shelden to compel the delivery of an oil and gas royalty deed executed by Samuel Bright, now deceased, which was delivered by Mr. Bright to a bank to be delivered to the plaintiff under the terms and conditions of a certain writing which was executed by them on August 25, 1928.

The heirs of Samuel Bright and the administrators of his estate answered the petition, putting in issue the claims of the plaintiff, and the main questions here involved are the nature and character of the writing executed by these parties and whether it was with or without consideration.

The trial court made detailed findings of fact and followed them with these two conclusions of law:

"1. The contract of August 25, 1928, was without consideration and was, therefore, no more than a continuing offer to sell, revocable at will. That offer having been revoked before the plaintiff paid or offered to pay the purchase price, no binding contract for the purchase of the royalty interest was consummated.

"2. Under the facts as found by the court the relief asked by plaintiff should be denied."

Judgment was rendered for defendants, and plaintiff appeals.

The body of the writing signed by these parties on August 25, 1928, is as follows:

"Witnesseth: That whereas on the 15th day of August, 1928, party of the first part agreed to sell and party of the second part agreed to buy an undivided one-half interest in and to all of the oil and gas and other minerals in and under a certain 36-acre tract of land in the west half of the southwest quarter of section 6, township 26 south, range 1 east, Sedgwick county, Kansas, for a consideration of $9,000, and

"Whereas, said Samuel Bright's title to said land was found to be unmerchantable, it is now agreed between the parties to said transaction, for and in consideration of the sum of one dollar each to the other in hand paid, the receipt of which is hereby acknowledged, that the attached royalty conveyance from party of the first part to party of the second part, shall be held in escrow by Valley Center State Bank under the following terms and conditions:

"Party of the first part agreed to make a diligent effort to have said title perfected and made merchantable within ninety (90) days from the date of this agreement, or as soon as possible after that date. Party of the second part agrees to have his attorney reëxamine the abstract of title to said land within three days after abstract is certified to date and delivered to party of the second part, and upon the payment of said sum of $9,000 to the account of party of the first part in Valley Center State Bank, Valley Center, Kan., said bank is hereby authorized and instructed to deliver said royalty conveyance to party of the second part or his assigns.

"Failure of party of the second part to pay $9,000 within four days after receipt of abstract showing merchantable title shall render this contract null and void and said bank shall return all papers in connection therewith to party of the first part, and all agreements and covenants therein contained shall be of no effect."

Five days before this writing was signed the following statement was addressed to the bank and signed by both these parties:

"To the Valley Center State Bank, Valley Center, Kan.:

"You are hereby authorized and instructed to release all papers in connection with the Samuel Bright conveyance to C. C. Shelden wherein $3,000 was held in escrow in connection with said royalty conveyance.

"Whereas, the title was found unmerchantable and the deal is hereby made at an end, the undersigned C. C. Shelden does hereby acknowledge receipt of the $3,000 and Samuel Bright does hereby acknowledge receipt of the royalty conveyance, and the said bank is hereby released from further liability."

It would seem there was no question as to the validity of the earlier contract of August 15, which was by mutual agreement on August 20 canceled, or, as was said in the release, "the deal is hereby made at an end." The first paragraph and part of the second of the contract of August 25 are in the nature of a history or preamble, and the balance of the second and the third and fourth are the ones containing the promises or obligations, one to the other, and the terms and conditions. The second paragraph states it is now agreed that the royalty conveyance shall be held in escrow in the Valley Center State Bank under the terms and conditions which follow.

Appellant insists that this is an escrow contract and as far as this language just cited and the promises and obligations of the landowner are concerned, that would seem to be correct, but the difficulty arises when we search for the promise and obligation of the plaintiff and what his part of the contract helps to make it as a whole. He nowhere promises to purchase the royalty, pay the $9,000 or take up the deed in escrow; neither does he in any way pay or promise to pay or do anything for even an option or time to purchase the same or take up the deed. He simply agrees the deal shall be at an end, if he fails to pay $9,000 within four days after receipt of abstract showing merchantable title.

Appellant cites many cases to show the writing here under consideration was an escrow contract. Some of them concern matters where the escrow holder has disregarded or violated his duties, and others where the maker of the escrow instrument has withdrawn or attempted to withdraw it from escrow, but none of them where there was a question as to the existence of any duty, promise or obligation on the part of the grantee.

The case of *Neal v. Owings,* 108 Kan. 73, 194 Pac. 324, was where the owner notified the escrow holder to withhold delivery of the deed after having signed a contract of sale where the grantee had paid $1,000 in cash and promised to pay the balance, one-half in cash and the remainder in the form of a note and mortgage. The court discussed the duties of the escrow holder where "a valid contract of sale was made."

The case of *Nolan v. Otney,* 75 Kan. 311, 89 Pac. 690, involves the

question of whether the title to property vested at time of delivery of deed to escrow holder or at death of grantor—no question about promise and performance of grantee.

In the case of *Grove v. Jennings,* 46 Kan. 366, 26 Pac. 738, the re-delivery of the deed by the escrow holder was held to be unauthorized where there was no evidence to establish that the grantee had failed to comply with the conditions of the contract, and it was said in the opinion that "The record is silent as to the conditions upon which the deed was to be delivered to Grove by the bank."

In the case of *Scott v. Stone,* 72 Kan. 545, 84 Pac. 117, it was held that upon delivery of the deed to the escrow holder by the grantor the conveyance becomes complete and the covenants of the deed relate back to the date of the contract of sale. In that case, however, the grantee agreed in the contract of sale to pay $1,000 and the balance of the purchase price by a definite date. The $1,000 was paid and put up in escrow with the deed.

Appellant relies strongly upon the decision in the case of *Davis v. Clark,* 58 Kan. 100, 48 Pac. 562, where a definition of an escrow contract was quoted with approval from 6 American and English Encyclopedia of Law, 557, which appears to be equivalent to 11 American and English Encyclopedia of Law, 2d ed., 333, as follows:

"'An escrow is an obligatory writing delivered by the party executing it to a third person, to be held by him until the performance of a specified condition by the obligee, or the happening of a certain contingency, and then to be delivered by the depositary to the obligee, when it becomes of full force and effect.'" (p. 104.)

The definition quoted and approved was all that was necessary to the determination of the question involved in that case, namely, the taking effect of it relating back to the time of deposit. The question of a definite promise made by both parties was fully recognized, the agreement being to furnish the money for a loan of $7,000 for the note and mortgage put up in escrow. As to the necessary features of an escrow contract, the same volume, two pages later, continues with the definition of such a contract, as follows:

"In order that an instrument may operate as an escrow, not only must there be sufficient parties, a proper subject matter, and a consideration, but the parties must have actually contracted. When the instrument purports to be a conveyance of land, for instance, the grantor must have sold and the grantee must have purchased the land. A proposal to sell or a proposal to buy, though stated in writing, will not be sufficient." (11 A. & E. Encyc. L., 2d ed., 335.)

Along the same line are the following expressions in 13 C. J. as to the essentials of a contract:

"Before an offer can become a binding promise and result in a contract it must be accepted, either by word or act, for without this there cannot be agreement. Nor is a promise binding on its maker unless the promisee has assented to it." (p. 272.)

"The offerer may revoke his offer before it is accepted, even though he has expressly declared in it that he will not, or has, by the very terms of the offer, allowed the offeree a certain number of days within which to accept it, as in the case of options or refusals, unless the offer is under seal, or unless the agreement to hold it open is supported by a consideration." (p. 293.)

In the recent case of *Rawson v. Valley Center State Bank,* 134 Kan. 711, 8 P. 2d 352, the owner offered to take $17,000 cash for a deed to his oil royalty in a certain tract, and the other party verbally accepted the offer and later put up $6,000 in the bank to apply on the purchase price. It was held not to constitute a contract but to be only an offer not in fact accepted.

"Negotiations between the owner of an oil royalty and a prospective purchaser considered, and held, the offer of the owner required acceptance by deposit of the full sum of $17,000 in a bank for the owner, and without that being done no contract binding either party came into existence." (Syl.)

There must be an obligation on the part of the grantee in order to make the writing a contract of any kind.

"Where an offer is made by a vendor to assign his right in a certificate of purchase, issued under a foreclosure sale, for a certain sum if accepted within a fixed time, it may be revoked by him until it is accepted; but if the vendee elects to accept the offer and gives notice of his acceptance within the time limited, such an accepted offer fixes the obligations of the parties and becomes a binding contract, and the execution of the assignment and the payment of the consideration must then be made within a reasonable time." (*Nieschburg v. Nothern,* 101 Kan. 110, syl. ¶ 1, 165 Pac. 857.)

"An instrument, in form a contract, provided that the first party should execute an oil and gas lease and deposit it in a bank, for delivery to the second party, when the second party should begin drilling a well in a specified locality. The second party agreed to begin drilling the well; but the instrument provided that if he did not begin drilling within a stated time the contract and lease should be of no effect. *Held,* the instrument when signed did not create an enforceable obligation, and the first party could withdraw at any time before the second party commenced to drill." (*Grow v. Davis,* 110 Kan. 214, syl. ¶ 1, 203 Pac. 683.)

We are unable to agree with appellant that the writing under consideration is an escrow contract, or a contract of any kind, because it contains no promise or obligation of any kind on the part of the grantee. We think the trial court was right when it held it was a continuing offer to sell.

The court also concluded that the writing was without consider-

ation. Appellant urges error in this regard, pointing out at least four considerations. The first one that the statute (R. S. 16-107) provides that all contracts in writing shall import a consideration. There are two reasons why this statute cannot apply to this instrument: First, because it attempts to state a consideration of one dollar each, which would be out of harmony with any imported or presumed consideration; and second, because aside from the one-dollar-each provision it shows upon its face there is no consideration when there was no promise or obligation on the part of the grantee. Aside from the feature of loss or detriment, which will be considered next, this writing appears, in the language of *Roller v. Ott*, 14 Kan. 609, to affirmatively show there was no consideration.

It is contended that the fact that the plaintiff in this writing agreed to have his attorney reëxamine the abstract of title, was such a loss or detriment to him as to constitute a consideration, although it may be conceded it was of no benefit to the grantor. The cases of *Dendy v. Russell*, 67 Kan. 721, 74 Pac. 248, and *Farmers Equity Coöp. Ass'n v. Tice*, 122 Kan. 127, 251 Pac. 421, are easily distinguishable from the one at bar. The first was a suit on a warranty and the latter on a promissory note. Third parties were interested in each case and in the former the purpose or reason for making such a contract was said by the court to be difficult to understand, and no less than two alternatives entered into the consideration of the particular action taken. A later case, that of *Sharpless v. J. B. Kirk Gas & Smelting Co.*, 128 Kan. 722, 280 Pac. 788, is more nearly under a similar state of facts. In it was a promise to make an option contract for the sale of gas properties for a definite amount and the prospective purchaser agreed to furnish at his own expense engineers to inspect, investigate and appraise the gas properties. Such promise was held not to constitute a consideration. That such expense was for his own benefit and was not a detriment or loss such as is contemplated as necessary for a consideration.

Does the following clause in the writing constitute a consideration?

"It is now agreed between the parties to said transaction, for and in consideration of the sum of one dollar, each to the other in hand paid, the receipt of which is hereby acknowledged . . ."

We think not.

"A recital in a contract that each party has paid to the other one dollar imports no consideration." (13 C. J. 367.)

"A bargain stated to be 'in consideration of one dollar by each to the other paid' does not support a contract even though it be assumed that the sum of one dollar was actually paid by each party to the other." (1 Williston on Contracts, 241.)

It is also urged that there is a moral obligation and that it is a case of novation. It is difficult to see how the case at bar can be considered under either of these classifications. The definition of a moral obligation, as given in one of the cases cited by appellant, makes it applicable as a compensation for benefits received, which are wholly lacking in this case.

"Moral obligation to make recompense for benefits received will sustain a subsequent promise to pay for the benefits." (*Holland v. Martinson*, 119 Kan. 43, syl. ¶ 2, 237 Pac. 902.)

As to novation, we do not think this case comes under the requirements stated for such in 13 C. J. 353, 1 Williston on Contracts, §§ 130 and 130a, and 20 R. C. L. 367.

The court found that the landowner on January 24, 1929, revoked and canceled all rights under the written instrument and demanded the return of his deed. The plaintiff answered this the following day, claiming his rights thereunder, but did not tender or offer to pay the $9,000 until February 3, 1930, more than a year later. The withdrawal of the offer by the landowner before the plaintiff attempted in any manner to accept was fully within the rights of the landowner, as was so forcibly stated in the syllabus in the case of *Grow v. Davis*, above cited and quoted, where the facts and circumstances were very similar to those in this case.

Reaching the same conclusion as did the trial court, that the writing in question was not an escrow contract but merely a continuing offer without consideration and revocable at will by the landowner, and that the offer was revoked before any offer to pay the purchase price was made, it is not necessary to consider the further questions submitted and argued as to the death of the landowner and other subsequent events making the writing unenforceable.

The judgment is affirmed.