No. 32,527

Genevieve C. Nelson, *Appellee*, v. John E. Schippel, *Appellant*.

*(56 P. 2d 469)*

Opinion filed April 11, 1936.

C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger and E. S. Hampton, all of Salina, for the appellant.

Z. C. Millikin and W. C. Millikin, both of Salina, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for specific performance of a written contract or for damages in the alternative.

Defendant appeals from adverse rulings on motions and demurrers to plaintiffs' respective petitions. Three petitions were filed. Defendant lodged against the original petition a motion to strike a certain portion thereof, which was overruled. That portion of the petition remained in the amended petitions and will be treated later. A motion to make the original petition definite and certain was sustained in part and overruled in part. Against each of the first and second amended petitions defendant leveled a motion to separately state and number the alleged causes of action for specific performance and damages, and also demurred to the amended petitions as a whole, and separately to each cause of action attempted to be pleaded for equitable and legal relief, on the ground no cause of action was stated for either form of relief. These motions and demurrers were overruled. Defendant appeals from each and all of the above adverse rulings. Space does not permit setting out three petitions. Proper treatment of the various contentions, however, requires a full copy of the last amended petition and contract. They are appended to and made a part of this opinion.

We shall first consider the overruling on the respective motions. It has been frequently held motions to strike, to make definite and certain and to separately state and number, rest in the sound discretion of the trial court from which rulings ordinarily an appeal does not lie. Unless it is shown such alleged error prejudiced the substantial rights of a party it will not be reversed. (R. S. 60-760; R. S. 60-3317; *Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648;

*Cribb v. Hudson,* 99 Kan. 65, 160 Pac. 1019; *Mullarky v. Manker,* 102 Kan. 92, 170 Pac. 31; *Hickman v. Cave,* 115 Kan. 701, 703, 224 Pac. 57; *Van Deren v. Heineke & Co.,* 122 Kan. 215, 218, 252 Pac. 459; *Allison v. Borer,* 131 Kan. 699, 293 Pac. 769.)

Defendant moved to strike all that portion of the original petition which in substance is now contained in the second amended petition in paragraph one between the words "Montgomery Ward & Company," to and including the words "and to evidence such agreement." The motion was on the ground those allegations were immaterial, argumentative, redundant and prejudicial. When a pleading is subject to such complaint a motion to strike should be sustained. It does not here appear the ruling would prejudice the defense. The ruling was in the discretion of the trial court, and its effect is not of such gravity as to justify a reversal. (*Hickman v. Cave,* supra.) Furthermore, the order does not affect substantial rights in the action and does not in effect determine the action. The order is therefore not appealable. (R. S. 60-3303.) See, also, *Fox v. Ryan,* 121 Kan. 172, 246 Pac. 520.

Defendant especially insists the court erred in not requiring plaintiff to separately state and number her alleged causes of action for specific performance and for damages. The purpose of this motion, of course, was to have the causes of action separated in order to be enabled to demur to them separately. Such separation was required prior to the amendment of the civil code in 1909 if different causes of action were in fact set out in the same pleading. That is not the rule now. (*Mullarky v. Manker,* supra.) The pertinent portion of R. S. 60-741 reads:

"If a pleading contains several causes of action, or different defenses, the court or judge may, *in his discretion,* require them to be separately stated and numbered." (Italics inserted.)

Assuming the ruling was appealable, there is but one cause of action, and hence the trial court did not abuse its discretion. In a case of this character several forms of relief may be granted, but there is only one cause of action. (*Henry v. McKittrick,* 42 Kan. 485, 22 Pac. 576; *Naugle v. Naugle,* 89 Kan. 622, 132 Pac. 164; *Knipe v. Troika,* 92 Kan. 549, 553, 141 Pac. 557; *New v. Smith,* 94 Kan. 6, 10, 145 Pac. 880; *Cribb v. Hudson,* supra.)

It is proper in an action for specific performance to plead in the alternative and ask for damages for nonperformance. (*Henry v. McKittrick,* supra; *Naugle v. Naugle,* supra; *Huey v. Starr,* 79 Kan.

781, 786, 101 Pac. 1075; *Stramel v. Hawes,* 97 Kan. 120, 124, 154 Pac. 232; *Cribb v. Hudson,* supra; *Knipe v. Troika,* supra; *Brush v. Boyer,* 104 Kan. 168, 178 Pac. 445; *Orr v. Thomas,* 105 Kan. 624, 627, 185 Pac. 1046; *Haston v. Citizens State Bank,* 132 Kan. 767, 297 Pac. 1061.)

In *Brush v. Boyer,* supra, it was said:

"In actions for the specific performance of a contract it is the well-established practice to ask, in the alternative, for money damages in the event the court finds it inequitable or impossible to compel specific performance. (*Naugle v. Naugle,* 89 Kan. 622, 629, 630, 132 Pac. 164; *Huey v. Starr,* 79 Kan. 781, 101 Pac. 1075.) In all such cases the action is purely equitable and the court has power to grant full relief." (p. 169.)

In *Haston v. Citizens State Bank,* supra, it was held:

"The court, having held that the plaintiff was not entitled to the specific performance asked and having before it all the interested parties and all the evidence pertinent to the transaction out of which the controversy arose, was warranted in proceeding to determine the rights of the parties and to administer equity between them." (Syl. ¶ 4.)

But defendant insists the petition was deliberately framed as an equitable action with the hope damages would be awarded in the alternative when plaintiff knew there could be no recovery of a money judgment on the contract. Defendant insists there never was any question about the fact this contract would not permit a decree of specific performance. He says plaintiff well knew that from the beginning. We are not so sure about that. Defendant himself has prepared about as able a brief on the subject as it has been the pleasure of the author of this opinion to read. We also observed nothing was left untouched on this point in oral argument. It would therefore appear the question was not considered to be so simple. To us the question is not free from difficulty. Furthermore, plaintiff was entitled to refer the question of her right to specific performance to a court for determination. In *Huey v. Starr,* supra, it was declared:

"The court erred in holding that the correct practice in such cases is for the plaintiff to elect before beginning the trial whether he will proceed for specific performance or for damages. On the other hand, it is well recognized that in such a case the *plaintiff has a right to the decision of the court upon his claim for specific performance,* and if he fail to obtain that relief he may then press his claim for damages. (See *Henry v. McKittrick,* supra, and cases there cited.)" (p. 787.) (Italics inserted.)

In *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73; the rule was stated thus:

"Where an action has been commenced in good faith to obtain equitable relief, and it subsequently appears that such relief cannot or ought not to be granted, but plaintiff is shown to have suffered a remediable wrong in the transaction forming the groundwork of the action, entitling him to be compensated by money damages, the court may, and where justice clearly requires it should, retain the cause and afford such relief, and makes the same efficient by providing for a recovery as in an ordinary legal action or by provisions appropriate to a judgment for equitable relief, as may be best suited to the circumstances of the particular case.

"Although the facts of a case warrant only legal relief and were known to the plaintiff when he commenced his action for equitable relief, the court may in such action grant the legal relief, where the constitutional right of trial by jury would not be unduly prejudiced." (Syl. ¶¶ 2, 3.)

The contract presents a number of annoying and perplexing problems on the subject of specific performance. We do not deem it necessary that we decide whether the petition states a cause of action for specific performance. Assuming specific performance cannot be decreed, has plaintiff no remedy in a court of equity? Shall we say a court of justice is shorn of all power to redress a flagrant wrong? Certainly not. In *Naugle v. Naugle,* 89 Kan. 622, 132 Pac. 164, it was declared:

"It is familiar doctrine that a court of equity having obtained jurisdiction of the subject matter will grant alternative monetary relief if necessary and make a full settlement of the controversy. (*Messer v. Hybernia Sav. etc. Society,* 149 Cal. 122, 84 Pac. 835; Fry on Specific Performance, 4th ed., sections 1298-1315; Pomeroy, Specific Performance of Contracts, 2d ed., sections 469-474.)" (p. 629.)

That plaintiff will be greatly damaged unless compensated requires no argument. Defendant, however, urges in order for plaintiff to recover damages she must first plead and prove a valid contract containing the essential elements of consideration and mutuality and in addition thereto a breach of the contract. In support of this contention we are referred to *Greenawalt v. Esté,* 40 Kan. 418, 19 Pac. 803; *Fitzstephens v. Whan,* 113 Kan. 650, 216 Pac. 269; *Van Deren v. Heincke & Co.,* 122 Kan. 215, 252 Pac. 459; *Brown-Crummer Investment Co. v. Amerman,* 126 Kan. 340, 268 Pac. 82; *Sharpless v. J. B. Kirk Gas & Smelting Co.,* 128 Kan. 722, 280 Pac. 788; *Rawson v. Valley Center State Bank,* 134 Kan. 711, 8 P. 2d 352; *Shelden v. Bright,* 135 Kan. 361, 10 P. 2d 831; 13 C. J. 331.

Space will not permit analysis of the facts in these cases. They support the generally well-recognized rule as stated by defendant. Some of them contain similar features to those in the instant case.

In none of them, however, did the party seeking remuneration completely perform at great expense and thereby utterly change his situation, and at the same time provide the exact benefits which the contract expressly stated defendant greatly desired.

Let us now examine the contention the contract lacks consideration. We are referred to the paragraph alleging a one dollar consideration. Defendant asserts that consideration will not support a contract such as this. (13 C. J. 367; *Shelden v. Bright*, 135 Kan. 361, 10 P. 2d 831.) The contract must, of course, be read as a whole. There are other paragraphs which clearly import a highly valuable consideration.

"WHEREAS, The second party hereto is the owner of parcels of land adjoining first party's above-mentioned parcel on said Santa Fe ave. and in the immediate vicinity thereof, and *greatly desires* that first party improve her said parcel, and further *greatly desires* that Montgomery Ward & Company establish their business on first party's parcel of land because of the effect such improvement and such lease *will have upon the value of second party's land*, and

"WHEREAS, First and second parties hereto are brother and sister and have a mutual interest in the other's property." (Italics inserted.)

The contract clearly discloses these parties, as brother and sister, had an interest, not only in their own, but in each other's property. Defendant owned adjoining property. He greatly desired that his sister spend the estimated sum of $40,000 on her lots to improve the value of his lots. In order to enhance the value of his lots he greatly desired that Montgomery Ward & Company establish its business adjoining his property. It is indeed difficult to understand how there could be more adequate consideration for a contract.

It is next urged the contract is wanting in mutuality, and, being unilateral, is unenforceable. We are reminded the contract did not bind the sister to build, that it simply said she was "about to undertake the construction of a two-story brick mercantile building." It has been said the term " 'undertake' may mean to lay one's self under obligation to perform." (65 C. J. 1209.) It was obviously the intent of the parties to obligate plaintiff to erect the building and to lease it to Montgomery Ward & Company for a five-year term, and to try to obtain another tenant in the event the first tenant failed to renew the lease, before defendant was to be obligated to perform. Plaintiff performed that obligation. She expended over $48,000 on the construction of this building. The building was to be occupied by the named tenant. In plaintiff's

obtaining that tenant defendant had a vital personal interest. Plaintiff performed. The tenant was to remain for five years. Plaintiff performed. The tenant vacated on the expiration of the lease. Plaintiff, in accordance with the terms of the contract, was to try to find a new tenant. She tried, but failed. She performed. In fact defendant obtained from plaintiff the full performance the contract required.

Defendant complains about the indefiniteness of the contract which states that she will transfer to defendant "a *divided* one-half interest in her property," instead of an *undivided* one-half interest. Plaintiff offered defendant the north half, the south half or an undivided half of the property, if he would convey to her real estate in the city of Salina of the money value specified in the contract. She demanded he comply with the provisions of the contract. He refused. Whatever want of mutuality there may have been in this contract is of no consequence now. Plaintiff has executed her part of the contract. She has supplied everything defendant desired.

In 13 C. J. 334, 335, the rule is stated thus:

"Want of mutuality is no defense in the case of an executed contract. A promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee. But where the contract does not contain a binding promise on either side, one party cannot bind the other by tendering performance."

Here plaintiff did not tender performance to build. She built. She performed all other requirements.

"Although there is a lack of mutuality in the beginning, this may be cured by the other party subsequently binding himself also by promise or act." (13 C. J. 335.) (See illustration following statement of rule.)

In *Electric Management & Engineering Corp. v. United P. & L. Corp.*, 19 F. 2d 311, it was held:

"Generally specific performance of contract will not be enforced by a court in favor of a party against whom court has no power effectually to compel its performance and who remains free to refuse its performance; but, if plaintiff has fully performed that which under contract he was not compelled to perform, lack of mutuality of remedy cannot be urged by other party as defense.

"Requirement of mutuality of remedy, authorizing specific performance, is satisfied, if mutuality exists at time suit is filed." (Syl. ¶¶ 5, 7.)

Defendant further urges that in this particular action plaintiff cannot recover a money judgment because the contract did not obligate him to pay in money. Well, the contract obligated him to

pay in property of a certain definite value in money. He refuses to transfer. the property. Therefore, plaintiff asks he be compelled to transfer the property or to give her its fixed value in money. Plaintiff's request is proper.

The petition discloses plaintiff requested certain reformation of the contract. The facts alleged were sufficient as against a demurrer. From what has been stated it follows the second amended petition stated a cause of action for alternative monetary relief. The demurrer was therefore properly overruled. The judgment is affirmed.

BURCH, C. J., not sitting.

## SECOND AMENDED PETITION

1. The plaintiff alleges that she is a resident of the city of Salina, Kan., and that place is her correct post-office address, that on the 29th day of February, 1928, the plaintiff was the owner, and is still the owner in fee simple, subject to the contract hereinafter mentioned, and in possession of the south half of lot eighty-three (83) and all of lot eighty-five (85) on Santa Fe avenue in the city of Salina, Kan., and said property then had a value of thirty-six thousand dollars ($36,000), and the defendant then owned and still owns in close proximity to said real estate so owned by plaintiff and on the same street and in the same block the following-described real estate: The south half of lot eighty-one (81), the north half of lot eighty-three (83) and the north half of lot eighty-nine (89), and at the commencement of this action the defendant also owned and still owns lot seventy (70) on seventh street and at the date of the making of the contract hereinafter mentioned Montgomery Ward & Company, of Chicago, Ill., was intending to locate one of its stores in the city of Salina for the retailing of its merchandise and said company had proposed that if plaintiff would remove the buildings then upon said real estate and improve said real estate by the erection of a new two-story brick mercantile building thereon costing not less than forty thousand dollars that said company would lease said real estate so improved for a term of five years, but plaintiff declined to entertain said proposition or to execute a lease for a period of five years only and the defendant realizing and well knowing that the erection of said building upon said real estate and the locating of a store by said company upon plaintiff's said real estate would be of great benefit to him and would greatly enhance the value of his own property then orally proposed to the plaintiff in substance that if she would make such improvements of her real estate as desired by said company and would execute a lease to said company of her real estate so improved for a term of five years from and after July 1, 1928, that at the expiration of said lease on July 1, 1933, if said Montgomery Ward & Company did not renew said lease or if plaintiff was unable to find a tenant for said property satisfactory to her then in that event or events defendant on her demand would convey to her real estate in the city of Salina, Kan., of a cash value equal to one half the value of her

said real estate and then fixed by plaintiff and defendant at thirty-six thousand dollars plus one half the cost of said building by them estimated to cost not less than forty thousand in consideration of which and upon the payment of one half the value of said real estate so fixed and one half the cost of said building plaintiff agreed to convey to defendant a divided one half of the property so improved, and to evidence such agreement then made said plaintiff and defendant entered into a contract in writing dated February 29, 1928, a copy of which is hereto attached marked "Exhibit A" and made a part hereof. But plaintiff avers that in reducing said contract to writing the scrivener employed by them for that purpose, by mistake, erroneously stated in lines ten and eleven on the first page of said contract the words "which said building and lots first party hereto has leased and let to Montgomery Ward & Company of Chicago, Ill.," whereas it should have been stated in conformity to their oral agreement then made that "said building if erected and lots first party can lease and let to Montgomery Ward & Company of Chicago, Ill.," or words of like import, and in line nine on page two of said contract said scrivener, by mistake, erroneously used the words "lease heretofore entered into" when he should have written in place thereof "to be entered into" or words of like import, in order that the contract as written may conform to the agreement and understanding of the parties then made and said agreement should be reformed accordingly.

2. This plaintiff further alleges that by said agreement so made and consummated and relying thereon and without notice of the errors therein as stated she was induced to and did on the 10th day of March, 1928, execute and deliver to said company a lease of her real estate expiring July 1, 1933, and did thereafter commence and complete the construction of a two-story brick mercantile building with a frontage of seventy-five (75) feet on Santa Fe avenue and one hundred ten (110) feet in depth covering the south half of said lot eighty-three (83) and all of lot eighty-five (85) on Santa Fe avenue in said city of Salina, Kan., costing forty-eight thousand one hundred ten dollars and seventy-four cents ($48,110.74), and she did put said company as tenant in possession of said demised premises so improved under said lease, and at the expiration of said lease said tenant vacated said demised premises and failed and refused to renew said lease or release said premises or longer occupy said building, and said building has since remained vacant and unoccupied notwithstanding the plaintiff at all times since July 1, 1933, until the commencement of this action has diligently endeavored to find another tenant for said building satisfactory to her, but without success.

3. This plaintiff further avers and says that she would not have executed said lease nor erected said building but for the agreement made with the defendant as mentioned herein and that she fully kept and performed on her part all the conditions of said agreement so made and at all times since the expiration of said lease she has been ready and is still ready, able and willing to convey to the defendant one half of said property so improved on his conveyance to her of real estate in the city of Salina, Kan., of a cash value equal to one half the value of her said real estate as fixed by said contract and one half the cost of said building in conformity to the terms of said contract, and she further alleges that prior to the commencement of this action the plaintiff

and her husband duly tendered to defendant a warranty deed for the north thirty-seven and a half feet of said property which adjoined improved property owned by him which he refused to accept and plaintiff at the same time orally offered to convey to him the south thirty-seven and a half feet of said property or an undivided one half of said property if he would convey to her real estate in the city of Salina to the extent specified in said contract and plaintiff has repeatedly and orally made demand upon the defendant to perform said contract on his part and to convey to her real estate in the city of Salina to the extent and of the value as specified in said contract and defendant then refused to accept such conveyance or any conveyance from the plaintiff of any part of said real estate and at all times since has continued to refuse to make any conveyance of real estate to the plaintiff or perform the obligations of said contract on his part, but on the contrary he attempted and still attempts to repudiate said contract on his part and denies any and all liability to fulfill its obligations and sets up and claims that said contract has no validity.

4. This plaintiff further says that said contract so executed omits to provide a plan or method of determining the cash value of the real estate to be conveyed by defendant in payment and satisfaction of one half the value of plaintiff's real estate and the erection of said building as fixed by said contract and one half the cost of the building erected, but plaintiff is advised and alleges the fact to be that in such circumstances this court has ample power to prescribe its own method of fixing the cash value of the real estate which defendant may be compelled to convey in payment of said sums of money to be discharged and plaintiff consents that such value may be determined by any three disinterested persons residing in Salina or by any qualified master the court may appoint for that purpose such value to be fixed as of the date of the commencement of this action or any date after the expiration of said lease as the court may find it became the duty of the defendant to make the conveyance provided for in said contract.

5. This plaintiff further alleges that after the execution of said lease and the erection of said building said real estate became greatly decreased in value and the market value thereof at the expiration of said lease and at all times since does not exceed forty thousand dollars and if defendant is not compelled to keep and perform his said contract with this plaintiff she will suffer damage by reason thereof in a sum not less than forty-two thousand and fifty-five dollars ($42,055).

6. Wherefore, plaintiff prays judgment that the agreement entered into between the said parties be reformed and be made to truly evidence the oral contract made by said parties, and that the court by proper order and decree require the defendant to immediately select the real estate in the city of Salina, Kan., he may rightfully convey to the plaintiff free of encumbrance and of a cash value of forty-two thousand and fifty-five dollars ($42,055), such value to be determined in any fair and equitable manner which the court may prescribe therefor and of such date as the court may find it became the duty of the defendant to make such conveyance under the terms of said contract and put plaintiff in possession of said real estate so conveyed and upon such performance on defendant's part that the court decree conveyance to him of one half of the plaintiff's real estate so improved and free and clear of all encum-

brance, and if such relief and specific performance of said contract be denied that plaintiff have and recover from the defendant the sum of forty-two thousand and fifty-five dollars ($42,055) with interest at six percent per annum from the commencement of this action less one half of the present market value of said real estate so improved by plaintiff and that plaintiff be decreed a lien upon all real estate owned by defendant in the city of Salina, Kan., until such judgment shall have been fully paid and that plaintiff have all other and further relief to which she is or may be entitled including costs.

## AGREEMENT

"This agreement, made in duplicate on this the 29th day of February, 1928, by and between Genevieve C. Nelson, of Salina, Kan., party of the first part, and John E. Schippel, of the same place of residence, witnesseth:

"Whereas, First party hereto is the owner of the south one half (½) of lot eighty-three (83) and all of lot eighty-five (85) on Santa Fe avenue in the city of Salina, Kan., on which parcel of land first party is about to undertake the construction of a two-story brick mercantile building at an estimated cost of forty thousand dollars ($40,000), which said building and lots first party hereto has leased and let to Montgomery Ward & Company, of Chicago, Ill., for the purpose of conducting therein a retail mercantile business, for the term of five years from and after July 1, 1928, and

"Whereas, The second party hereto is the owner of parcels of land adjoining first party's above-mentioned parcel on said Santa Fe avenue, and in the immediate vicinity thereof, and greatly desires that first party improve her said parcel and further greatly desires that Montgomery Ward & Company establish their business on first party's parcel of land because of the effect such improvement and such lease will have upon the value of second party's land, and

"Whereas, First and second parties hereto are brother and sister and have a mutual interest in the other's property,

"Now, therefore, it is agreed, in consideration of one dollar ($1) this day paid by first party to second party, and in further consideration of first party's undertaking to construct said mercantile building at an estimated cost of forty thousand dollars ($40,000), and in further consideration of love and affection, as follows:

"1. It is agreed that the ground value of the south half of lot No. 83, and of lot No. 85 on Santa Fe ave., in the city of Salina, Kan., now owned by first party, is at the date hereof thirty-six thousand dollars ($36,000), and that the value of said parcel of land after said new mercantile building is constructed shall be thirty-six thousand dollars ($36,000) plus the actual cost of construction of said building.

"2. It is agreed that at the expiration of the lease heretofore entered into between first party and Montgomery Ward & Company for the rental of said parcel of land, and the building thereon on July 1, 1933, if Montgomery Ward & Company do not renew their said lease or if first party is unable to find a tenant for said property satisfactory to her, then in that event second party, on demand, agrees to convey to first party real estate in the city of Salina, county of Saline and state of Kansas, of a cash value equal to one half (½) of the value of the parcel of land and the building thereon leased to Montgomery

Ward & Company, as fixed in the preceding paragraph hereof, and it is further agreed that the said first party for the consideration herein mentioned, will transfer and deliver to second party a [warranty] deed for a divided one half (½) interest in the aforementioned parcel of land and building thereon.

"In witness whereof, We have hereunto set our hands and seals this 29th day of February, A. D. 1928.

GENEVIEVE C. NELSON. (Seal.)

JOHN E. SCHIPPEL. (Seal.)"